**UNITED STATES of America, Appellee,**

v.

**William K. McGRANE, Appellant.**

**No. 84–1135.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1984.

Decided Oct. 23, 1984.

George D. Pittman, Clayton, Mo. and Daniel V. O'Brien, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Larry D. Hale and Steven A. Muchnick, Asst. U.S. Attys., St. Louis, Mo., for appellee.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

William K. McGrane appeals from his conviction[1] upon a jury trial for conspiring to manufacture methaqualone, a schedule II non-narcotic controlled substance,[2] and for manufacturing methaqualone.[3] The district court[4] sentenced McGrane to serve consecutive sentences totalling seven years, plus two years of special probation. McGrane contends on appeal: (1) that the trial court erred in admitting evidence obtained through an illegal search, and (2) that the trial court gave inadequate cautionary instructions to the jury prior to trial recesses and separations. We reject these claims and affirm.

## I. BACKGROUND.

On February 1, 1983, codefendant Silas Givens ordered chemicals and glassware from the American Scientific Products Company, Maryland Heights, Missouri. Givens completed a credit application form in the name of Waters Associates, 19 Brighton Way, #2 North, Clayton, Missouri, listing William McGrane as president and Givens as vice president. Givens obtained some chemicals during his visit on February 1; the supplier subsequently shipped additional chemicals to 19 Brighton Way.

Because some of the chemicals that Givens ordered could be used to manufacture controlled drugs, American Scientific notified DEA agent Lloyd W. Patterson of the purchase orders. Patterson obtained copies of the orders and credit application, reviewed the purchase orders with a DEA chemist, and determined that the materials ordered might be utilized in manufacturing methaqualone. Methaqualone is a schedule II controlled substance[5], so it cannot be produced lawfully by unauthorized manufacturers. Waters Associates did not have manufacturing authority for methaqualone.

On February 18, 1983, Patterson went to 19 Brighton Way to inspect the premises and surrounding area. The two-story building contained four apartment units, two on each floor, and a basement. He entered the basement through an unlocked door and discovered four storage lockers, each marked with the number of an apartment in the building. The walls of the lockers were constructed of board slats spaced one to two inches apart. Patterson looked into the locker for apartment 2N (the address of Waters Associates) and observed approximately twelve containers labeled by various chemical companies. At the time of this investigation, both

---

1. McGrane's codefendant Silas Givens was also convicted; Givens has not appealed.

2. 21 U.S.C. §§ 841(a)(1), 846 (1982).

3. 21 U.S.C. § 841(a)(1) (1982).

4. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

5. 21 C.F.R. § 1308.12(e)(2) (1983).

McGrane and Givens resided in apartment 2N.

As part of his investigation, Patterson obtained a cardboard container with a transmitting device secreted inside. On February 23, 1983, he obtained a court order allowing him to monitor the signal emitted by the transmitter. Some of the chemicals ordered by Waters Associates were delivered to 19 Brighton Way in this special container; by monitoring the signal Patterson later determined that the container had been moved to 2050 Woodson Road in Overland, Missouri. DEA agents placed the Woodson Road building under surveillance. On March 16, 1983, Patterson applied for and obtained search warrants for apartment 2N at 19 Brighton Way, the corresponding storage locker, and suite 203 at 2050 Woodson Road. The warrants were executed on March 18, 1983. Givens and McGrane were present in suite 203 at the time of the search and were placed under arrest; agents seized chemicals and documents from the suite, including methaqualone and the formula for manufacturing methaqualone. Additional items were seized from the apartment and storage locker at 19 Brighton Way.

## II. DISCUSSION.

### A. Inspection of the Storage Locker as an Unlawful Search.

McGrane contends that Patterson's inspection of the storage locker violated his fourth amendment rights, and that this illegal search led to the discovery of his participation in manufacturing methaqualone. We conclude that no illegal search occurred and, therefore, reject McGrane's contention.

The issue presented in this case is similar to that in *United States v. Eisler*, 567 F.2d 814 (8th Cir.1977). In *Eisler*, the appellants claimed that testimony concerning an incriminating conversation between defendants that occurred in one defendant's apartment building was inadmissible because it resulted from an illegal search. A DEA agent had gained entry to the building by surreptitiously following a tenant who opened the secured door with a key. While in the common hallway, the agent overheard the conversation and made observations of the defendants' activities. In rejecting the claim that an unlawful search had occurred, we applied the "reasonable expectation of privacy" test established by the Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We said:

> The common hallways of Hoff's apartment building were available for the use of residents and their guests, the landlord and his agents, and others having legitimate reasons to be on the premises. That [the agent] was a technical trespasser in a *common* hallway is of no consequence since appellants had no reasonable expectation that conversations taking place there would be free from intrusion.

*United States v. Eisler, supra*, 567 F.2d at 816 (emphasis in original); *see United States v. Penco*, 612 F.2d 19, 24–25 (2d Cir.1979) (apartment dweller's expectation of privacy does not extend to common hallway, stairwell, or basement garage).

■ Like the hallway in *Eisler*, the basement of 19 Brighton Way constituted a common area of the building, accessible to all tenants and the landlord. Accordingly, McGrane did not have an expectation of privacy extending into the basement and the visual inspection of a storage locker in this area did not violate the fourth amendment. *See United States v. Luschen*, 614 F.2d 1164, 1173 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980).

That Patterson gained entry to the basement as an uninvited person does not affect this analysis. Our inquiry focuses on McGrane's expectations of privacy, not the propriety of Patterson's conduct. In *Eisler*, we stated that the agent's status as a trespasser was "of no consequence" in determining whether there was an expectation of privacy. 567 F.2d at 816. Likewise, in *Penco*, the court disregarded the fact that agents had entered an apartment building under false pretenses. 612 F.2d at 21. When Patterson entered a common

area of the building, he did not invade McGrane's privacy and committed no constitutional violation. Thus the trial court properly admitted the evidence in question.

### B. Jury Instructions.

 McGrane contends that the district court committed reversible error because it failed to instruct the jurors not to let anyone talk about the case in their presence and to avoid media coverage of the trial. The record discloses that on at least ten occasions the judge instructed the jurors that they should not discuss the case among themselves or with any other persons. These instructions adequately cautioned the jury concerning its obligations.

The judgment of the district court is affirmed.