**UNITED STATES of America, Appellee,**

v.

**John Calvin NABORS, Jr., Appellant.**

**No. 84–1386.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1984.

Decided May 6, 1985.

Rehearing and Rehearing En Banc Denied June 18, 1985.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Robert J. Govar, Asst. U.S. Atty., Little Rock, for appellee.

Before BRIGHT, McMILLIAN and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

John Calvin Nabors appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas upon a jury verdict finding him guilty of conspiracy to possess with intent to distribute and to distribute meperidine in violation of 21 U.S.C. § 846, distribution of meperidine in violation of 21 U.S.C. § 841(a)(1), and pos-

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

session with intent to distribute hydromorphone, meperidine, methadone, and secobarbital in violation of 21 U.S.C. § 841(a)(1). Appellant was sentenced to a total of twenty years imprisonment, followed by five years of special parole and fined $15,000. For reversal appellant argues that the district court erred in (1) finding that appellant lacked a legitimate expectation of privacy in Gena Preston's house, (2) failing to grant appellant's motion for a new trial because of prosecutorial misconduct during closing argument and (3) admitting evidence of other crimes. For the reasons discussed below, we affirm.

The facts can be summarized as follows keeping in mind that the evidence must be construed in the light most favorable to the jury verdict. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

A hospital pharmacy in Little Rock, Arkansas, was robbed on November 22, 1982, at approximately 9:30 p.m., by two or three armed assailants wearing dark colored jumpsuits and ski masks. The assailants forcibly gained entrance to the pharmacy and then forced open the locked door to the room where most of the pharmacy's controlled substances were kept. Although a staff pharmacist triggered the alarm system during the robbery, the system did not function because the telephone lines had been cut.

An inventory of the hospital pharmacy made the morning following the robbery revealed that a variety of controlled substances had been taken during the robbery, including meperidine, hydromorphone, methadone, and secobarbital.

Shortly after the time of the robbery, on November 22, 1982, appellant visited Gena Preston at her home in Little Rock, Arkansas. Preston testified that during that visit appellant asked her if she had ever tried pure pharmaceutical cocaine, one of the substances taken from the pharmacy that night. Appellant then produced a small brown bottle containing cocaine.

After using the cocaine, appellant and Preston discussed the delivery of additional drugs. Appellant and Preston had an ongoing drug dealing relationship. Appellant supplied drugs to Preston who then sold the drugs to John Drake.

On the afternoon following the robbery, appellant and Preston drove to the home of appellant's father in Little Rock. Preston waited in the car while appellant went inside. Appellant returned to the car carrying a tote bag containing approximately eighty boxes of meperidine which he placed on the floor near Preston's feet. Each box contained ten syringes of a premeasured dose of the drug. Preston, who was to sell the drugs for appellant, took the drugs back to her home and hid them. She subsequently sold the meperidine to her brother and to John Drake.

On Sunday evening, November 28, 1982, John Drake removed some boxes of meperidine from a hiding place in his home and placed them in his shaving kit which he then hid in the tool box of his truck. Drake and his family then went to visit his wife's sister. On the way Drake was stopped by North Little Rock and Sherwood police officers. Drake consented to the search of his truck that resulted in the discovery of the drugs hidden in his tool box. Appellant's fingerprints were found on these drugs and other drugs found in Drake's house pursuant to a consent search. After being advised of his rights, Drake told the officers that he had obtained the drugs from Preston. He also informed the police that Preston received the drugs from a man named "John," but that he could not identify the man because he had seen him once only for a moment. Drake agreed to cooperate with the police.

On the night following his arrest, Drake went to Preston's house wearing a body wire. In Preston's house Drake observed a paper sack containing boxes of meperidine. Preston refused to give Drake the drugs, however, because Drake had not paid for the other drugs she had given him previ-

ously and Drake had not brought money with him. As instructed by the police, Drake told Preston that he would pay her what he owed her and would pay her in cash if she could arrange to have all the remaining drugs brought to her house. Preston agreed to contact "John" and have the drugs delivered to her house.

At approximately 5:00 p.m. on Monday, November 29, 1982, Drake received a telephone call from Preston informing him that she expected "John" to deliver the remaining drugs to her house that afternoon, but that he had not yet arrived. Preston asked Drake to come to her house with his money. He agreed.

Meanwhile, the investigating officers commenced surveillance of Preston's house following the application and receipt of a state search warrant for Preston's house. At approximately 6:20 p.m. on November 29, 1982, an officer on the surveillance team observed appellant drive into Preston's driveway and walk toward the back of Preston's house, carrying a dark colored athletic bag in one hand. The surveillance officer notified the surveillance team of appellant's arrival.

Preston was waiting on the back porch of her house when appellant arrived. Preston testified that appellant told her that he intended to spend the night at her house. Preston and appellant entered the house locking the back door behind them. Preston drew the window shades in the dining room and then she and appellant began to inventory the drugs inside the athletic bag. Shortly thereafter, someone knocked on the front door. Preston answered the door while appellant gathered the drugs and placed them in the athletic bag.

To warn appellant that the police were knocking, she asked loudly whether the police had a search warrant. The police told Preston that the warrant was on the way, but she said that they could not enter until they produced the warrant. Nevertheless, the police entered the back of the house and arrested appellant while he was trying to escape through a bathroom window with the open athletic bag filled with pharmaceutical drugs.

Appellant and Preston were indicted on several drug related charges. Preston agreed to testify on behalf of the government in exchange for immunity from prosecution. Appellant was convicted by a jury on January 21, 1984. It is from that conviction that appellant now appeals.

*Legitimate Expectation of Privacy*

Appellant argues that the district court erred in denying appellant's motion to suppress evidence seized by the government during a search of Gena Preston's house on November 29, 1982, pursuant to a search warrant. The government argues that the district court was correct in finding that appellant's fourth amendment rights were not violated because appellant did not possess a reasonable or legitimate expectation of privacy in Preston's house on the day of the challenged search.

■■■ A person challenging the constitutionality of a search must demonstrate that he or she possessed a legitimate expectation of privacy in the particular area searched. *Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–33, 58 L.Ed.2d 387 (1978) (*Rakas*). That fourth amendment rights are personal and may not be vicariously asserted is clear. *See United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2443, 65 L.Ed.2d 468 (1980). The Supreme Court has indicated that a "casual visitor" to a house does not possess a legitimate expectation of privacy sufficient to challenge the search of a room to which he or she has never been or in which he or she only arrived a minute before the search commenced. *See United States v. Perez*, 700 F.2d 1232, 1236 (8th Cir.1983), *citing Rakas*, 439 U.S. at 142, 99 S.Ct. at 429. Several courts have determined that a guest in another's home can possess a legitimate expectation of privacy thus permitting the guest the right to challenge the search of the host's home, thereby distin-

guishing such a guest from the "casual visitor" in *Rakas. See United States v. Torres*, 705 F.2d 1287, 1295 (11th Cir.1983); *United States v. Perez*, 700 F.2d at 1236; *United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir.1981) *(Haydel )*; *United States v. Robertson*, 606 F.2d 853, 858 n. 2 (9th Cir.1979). In each of these cases there were present several factors relevant to the determination whether a guest possesses a legitimate expectation of privacy in his host's home that are absent in the present case. In *United States v. Haydel*, 649 F.2d at 1155, the Fifth Circuit relied on the following factors in concluding that the defendant possessed a legitimate expectation of privacy in his parents' home: (1) the defendant's parents gave him a key to their home, thereby providing him with virtually unencumbered access; (2) the defendant stored clothing at his parents' home and occasionally remained there overnight; (3) the defendant conducted a significant portion of his gambling activities at his parents' home and he owned the records seized; (4) the defendant apparently possessed the ability to exclude others from his parents' home; and (5) the defendant exhibited a subjective expectation that the contents of the box stored under his parents' bed were to remain private.

In *United States v. Rackley*, 742 F.2d 1266, 1270 (11th Cir.1984), the Eleventh Circuit stated that although there was testimony that the appellant in *Rackley* possessed a key to his host's home and stayed overnight there several times, he did not stay in the house immediately preceding the search and did not keep a full wardrobe in the house when he was there. Based on those facts, the court held that if the appellant possessed an expectation of privacy, it was limited to the guest bedroom and, because no evidence was seized in the guest bedroom, his expectation of privacy in the guest bedroom was of no legal consequence. *Id.* Other courts have found that guests in varying factual situations had no expectation of privacy in their host's home. *See, e.g., United States v. Adamo*, 742 F.2d 927, 947 (6th Cir.1984) (guest at a birthday party had no expectation of privacy in host's home), *cert. denied,* — U.S. —, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v. Robinson*, 698 F.2d 448, 454–55 (D.C.Cir.1983) (guest in home where other people freely entered failed to demonstrate legitimate expectation of privacy); *United States v. Briones-Garza*, 680 F.2d 417, 422–23 (5th Cir.) (illegal alien who resided in a house used as a "way station" for smuggling Mexicans into the United States did not have a reasonable expectation of privacy), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982); *United States v. Meyer*, 656 F.2d 979, 981–82 (5th Cir.1981) (guests who did not have a key to host's home, left no personal belongings there, and did not enjoy unencumbered access did not possess a legitimate expectation of privacy).

◼ In the present case appellant did not have a key nor did he have unencumbered access to Preston's house. Appellant did not have permission to go into Preston's home when she was not there. In fact, she instructed appellant not to visit her without calling. Although appellant visited Preston two or three days a week from June 1982 through November 1982, appellant never spent the entire night there. Appellant did not receive mail or keep any personal belongings at Preston's home. Appellant was at Preston's home only a short time before the police arrived with a warrant to search the premises. Furthermore, appellant never claimed ownership of the drugs seized from his possession at Preston's home on November 29, 1982. Finally, although appellant argues that he obviously intended the drug transaction to remain private, "the subjective expectation of not being discovered conducting criminal activities is insufficient to create a legitimate expectation of privacy." *United States v. Meyer*, 656 F.2d at 982, *citing Rakas*, 439 U.S. at 143–44 n. 12, 99 S.Ct. at 430–31 n. 12. *See also Oliver v. United States,* — U.S. —, 104 S.Ct. 1735, 1743

n. 13, 80 L.Ed.2d 214 (1984) ("Certainly the Framers did not intend that the Fourth Amendment should shelter criminal activity wherever persons with criminal intent choose to erect barriers and post no trespassing signs."). We hold, therefore, that the district court did not err in finding that appellant failed to establish that he had a legitimate expectation of privacy in Preston's home on the date of the challenged search.

### Prosecutorial Misconduct

Appellant argues that statements made by the prosecution during closing argument prejudiced appellant before the jury, thus depriving him of his right to a fair trial. Appellant argues that the prosecution accused defense counsel of misstating the evidence and invoked God on the side of the prosecution. The government argues that the issue has not been preserved for appellate review because appellant failed to object to the comments during closing argument, request a curative instruction or make a motion for a mistrial because of the comments. The government argues, therefore, that the proper standard of review is plain error and that the prosecution's comments during closing argument did not constitute plain error. The government argues that its closing argument was a fair comment on and in reply to the points raised by defense counsel's closing argument.

■ This court has often rebuked prosecutors for improper statements made during closing arguments. *See United States v. Harvey,* 756 F.2d 636, 646–49 (8th Cir.1985) and citations contained therein. However, the district court is vested with broad discretion in controlling closing arguments. *Id.; United States v. Llach,* 739 F.2d 1322, 1330 (8th Cir.1984); *United States v. Michaels,* 726 F.2d 1307, 1315 (8th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). If an arguably improper statement made during closing argument is not objected to by defense counsel, this court will only reverse under exceptional circumstances. Fed.R.Crim.P. 52(b).

■ In the present case appellant failed to object to the arguably improper comments. In its general instructions, the district court carefully cautioned the jury that the attorneys' arguments were not evidence and that they should consider only the evidence in arriving at their verdict. *See United States v. Harvey,* 756 F.2d at 649. Furthermore, the evidence in this case was substantial. When viewed in the light of the entire trial, the prosecutor's statements clearly did not constitute plain error.

### Evidence of Other Crimes

Appellant challenges the district court's decision to admit evidence of appellant's participation in two hospital pharmacy robberies, arguing that the government failed to adequately prove appellant's participation in the other crimes and the prejudicial effect of this evidence outweighed its probative value.

■ Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that his or her conduct on a particular occasion was in conformity with it. However, evidence of prior conduct which may constitute a separate crime may be offered to prove motive, intent, opportunity, knowledge, preparation, common scheme or plan, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). *E.g., United States v. Llach,* 739 F.2d at 1327. Before evidence of other crimes may be admitted, the following prerequisites must be established: (1) the evidence of the other act must be relevant to a material issue; (2) the other act must be similar in kind and reasonably close in time to the crime charged; (3) the evidence of the other act must be clear and convincing; and (4) the proba-

tive value of the evidence must not be outweighed by its prejudice.

*Id., citing United States v. Miller,* 725 F.2d 462, 466 (8th Cir.1984). If the district court finds that the admissibility requirements of Fed.R.Evid. 404(b) have been satisfied, then a cautionary instruction to the jury should be given. *United States v. Llach,* 739 F.2d at 1327. Finally, the court will not reverse the district court's decision to admit other crimes evidence under Fed. R.Evid. 404(b) absent a showing of an abuse of discretion. *Id.; United States v. Boykin,* 679 F.2d 1240, 1244 (8th Cir.1982).

 In the present case the evidence concerning the robberies of Riverview Hospital Pharmacy on September 18, 1982, and Memorial Hospital Pharmacy on November 22, 1982, were offered to prove intent, design, plan, and motive. Appellant does not dispute that the first two requirements of admissibility under Fed.R.Evid. 404(b) have been satisfied. Nor does appellant argue that the district court failed to give the appropriate cautionary instruction. Specifically, appellant argues that the government failed to prove the other crime by clear and convincing evidence and that the prejudicial impact of this evidence outweighed its probative value.

Preston testified that appellant told her that he and two others had participated in the robbery of Memorial Hospital on November 22, 1982. "Direct testimony of the defendant's participation in the prior transaction is sufficient to meet the clear and convincing standard." *United States v. Llach,* 739 F.2d at 1327, *citing United States v. Evans,* 697 F.2d 240, 248 (8th Cir.), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 352 (1983). Gena Preston also testified that on September 18, 1982, the same day as the robbery of Riverview Hospital Pharmacy, appellant and two other men came to her house with a duffle bag filled with pharmaceutical drugs. She testified that she observed appellant and the two other men as they inventoried the drugs contained in the duffle bag on September 18, 1982. Appellant has not demonstrated that the district court abused its discretion in concluding that there was clear and convincing evidence that appellant participated in the two hospital pharmacy robberies.

Finally, the district court made a specific finding that the prejudicial effect of this evidence was outweighed by its probative value. The district court has broad discretion in determining whether the probative value of other crimes evidence is outweighed by its prejudicial impact. *See United States v. Miller,* 725 F.2d at 466. The district court carefully instructed the jury at the time the evidence was admitted about the narrow purpose for which this evidence was admitted. We hold, therefore, that the district court did not abuse its discretion in admitting the evidence of other crimes under Fed.R.Evid. 404(b).

Accordingly, we affirm the judgment of the district court.