UNITED STATES of America, Appellee,

v.

**Perry YORK, Appellant.**

UNITED STATES of America, Appellee,

v.

**Peter Andrew ROBINSON, Appellant.**

**Nos. 86–5096, 86–5097.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1986.

Decided Oct. 5, 1987.

Rehearing Denied in No. 86–5096
Oct. 29, 1987.

---

Brian O'Neill and James D. O'Connor, Minneapolis, Minn., for York.

Daniel Scott, Federal Public Defender, Minneapolis, Minn., for Robinson.

Jon M. Hopeman, Asst. U.S. Atty., for appellee.

Before LAY, Chief Judge, WOLLMAN, Circuit Judge, and HANSEN,* District Judge.

PER CURIAM.

## I. BACKGROUND

Peter Robinson and Perry York each appeal from final judgments entered in the United States District Court for the District of Minnesota,[1] after a jury's verdict in their joint trial finding each of them guilty of armed robbery of a credit union in violation of 18 U.S.C. §§ 2113(a) and (d), and 2. Each appellant's sentence was enhanced due to his use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Additionally, appellant Robinson was convicted of a violation of 18 U.S.C. § 922(h)(1), i.e., being a felon in receipt of a firearm which has passed through interstate commerce.

Appellant Robinson was sentenced to consecutive terms of seven and five years, respectively, on Counts 1 and 2 (armed credit union robbery and use of a firearm in a crime of violence), and to a concurrent five year term on Count 3 (felon in receipt of a firearm which has been transported in interstate commerce).

Appellant York received consecutive sentences of fifteen years on Count 1 and five years on Count 2.

There is no doubt that the appellants Robinson and York and their co-defendant James Patrick Quinn robbed the Carpenters Credit Union in St. Paul, Minnesota, a credit union whose deposits are insured by the National Credit Union Administration, on September 11, 1985, at approximately 11:30 a.m. Quinn, who was a paid government informant at the time of the robbery, pleaded guilty to the crime pursuant to a plea agreement for a fifteen year sentence and testified for the government against York and Robinson. Robinson admitted on the stand both in his direct and cross examination that he participated in the robbery, and York's counsel conceded in his opening statement to the jury that York took part in the robbery as well. Defendant York did not take the stand. Moreover, the defendants stipulated at trial that they and co-defendant Quinn robbed the Carpenters Credit Union, with defendant York leaping over the teller counter and taking approximately $4,992 of money from the teller's drawer. The issues revolve around the defendants' entrapment claims and the trial court's rulings.

## II. ISSUES

For reversal of his convictions, appellant Robinson urges: (1) that his attempt at trial to put forth an entrapment defense was prejudiced by erroneous evidentiary rulings by the trial judge; (2) that Quinn's alleged solicitation of Robinson to rob the Carpenters Credit Union violated fundamental principles of fairness and due process sufficient to set aside Robinson's convictions on public policy grounds; (3) that the trial court committed reversible error by permitting the prosecutor to use Robinson's involuntary statements for impeachment; and (4) that Robinson's sentence for armed robbery could not be enhanced pursuant to 18 U.S.C. § 924(c), because that section was not effective at the time of the robbery. Robinson further argues that his convictions under 18 U.S.C. § 2113(d), and 18 U.S.C. §§ 924(c) and 922(h)(1) should be vacated because the small handgun Robinson admittedly used during the robbery was not proved to be a "firearm" as defined in 18 U.S.C. § 921(a)(3) and was inoperable and incapable of firing.

Appellant York asserts his convictions should be reversed for alleged trial court errors (1) in communicating with the jury ex parte concerning a question about the instructions, (2) in overruling York's objections made during the prosecutor's final argument, and (3) at sentencing. York also joins in Robinson's assignments of error concerning the trial court's evidentiary rulings on the entrapment issue, and on the due process and firearm use sentence enhancement issues. Additionally, York contends the trial court erred in admitting

---

* THE HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Robert G. Renner, United States District Judge, presiding.

evidence tending to show York had committed other credit union robberies.

The facts surrounding each of the legal issues are recited where necessary, keeping in mind that the evidence must be construed in the light most favorable to the jury's verdict. *See Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed. 2d 590 (1974).

## A. The Entrapment Claims

The first issue for review pertains to the claim of entrapment and is jointly raised by the appellants.

First, appellants contend that the trial court should have, but did not, permit them to introduce into evidence Robinson's exhibit number 21, a group of Federal Bureau of Investigation (FBI) administrative reports which documented Quinn's contacts with the government and which were offered to support the assertion that Quinn was an agent of the government. Additionally, and related to this contention, is appellants' assertion that the trial court erred by refusing to instruct the jury that Quinn was a government agent (Robinson's proposed instruction number 42), and that the government is responsible for its agents (Robinson's proposed instruction number 43).

■ With respect to the trial court's evidentiary ruling on the administrative reports, it is well settled that a district court has broad discretion in judging the relevance and admissibility of evidence. *Smith v. Firestone Tire and Rubber Co.,* 755 F.2d 129, 134 (8th Cir.1985). "Absent a clear showing of an abuse of discretion, a district court's determination regarding the inadmissibility of certain evidence will not be disturbed on appeal." *Id.* at 134. We find no error in Judge Renner's ruling denying the admission of the administrative reports. Appellants were liberally permitted to explore the nature and breadth of Quinn's relationship with the FBI, including the frequency and contents of his reports as an informant, and the record shows that appellants were permitted to introduce several other exhibits documenting Quinn's activities as an informant,

some of which were duplicative of the excluded exhibit.

Appellants' assertion that the trial court erred in refusing to give Robinson's proposed instructions 42 and 43 is also without merit.

Proposed instruction number 42 would have instructed the jury that, for purposes of entrapment, Quinn was a government agent as a matter of law.

■ The issue of whether an informant should be considered a government agent is generally an issue of fact for the jury. *United States v. Hoppe,* 645 F.2d 630, 633 (8th Cir.1981). This is especially so where, as here, there was evidence that the informant was admonished several times by the FBI agents to whom he reported not to engage in the type of conduct which gave rise to these charges. The proposed instruction would have withdrawn the issue of agency from the jury and was not warranted under the evidence.

■ Proposed instruction number 43 was also directed at establishing Quinn's agency. The proposed instruction generally asserted that the government remains responsible for the activities of its agents or informants, and that the government cannot later "claim disassociation through ignorance."

Again, the jury remained free to find that Quinn acted as a government agent throughout the conduct which gave rise to these charges. Counsel was permitted to extensively argue that Quinn was an agent, and that the government was responsible for his conduct. The trial court's instructions contemplated the link between the government and Quinn, and correctly instructed the jury on the law of entrapment. The defendants also assert that Robinson's proposed instructions number 42 and 43 were necessary in order to "cure" the alleged error by the trial court in refusing admission of Robinson's exhibit 21. Since we have already determined that the trial court committed no error in denying admission of Robinson's exhibit 21, the alternative argument asserted for submission of

Robinson's proposed instructions number 42 and 43 falls of its own weight.

We find no error in the trial court's refusal to adopt and submit to the jury Robinson's proposed instructions number 42 and 43.

■ Appellants next assert that the trial court erred in excluding evidence that the government, in its association with Quinn, did not comply with FBI guidelines for the hiring, use, and monitoring of informants. Appellant Robinson, joined by York, made a lengthy offer of proof in support of this position. Appellants contend that the government's failure to adhere to its own guidelines would have rebutted the contention that appellants were predisposed to commit the offense.

Having reviewed the record, we conclude that the trial court did not abuse its discretion in limiting this line of inquiry. To the extent that the proffer demonstrated the existence of government guidelines which, due to Quinn's conduct, required the government to discontinue his use as an informant, and further demonstrated that the government did not thereafter discontinue the use of Quinn, the proffer was and is simply not probative of appellants' predisposition to commit the offenses. Of course, this is quite different from the matter of the relevance of Quinn's *conduct toward the appellants* to the issue of predisposition, a matter which appellants were permitted to explore at length.

■ Next, appellants ask us to adopt a rule requiring the government to have probable cause to believe an individual has already engaged in a substantially similar criminal enterprise before the government or its agents have anything to do with providing an opportunity for the defendant to commit the crime charged. Such a rule is not called for by the facts of this case, and would unduly hamper the ability of law enforcement authorities to infiltrate and enter the often shadowy world of crime where criminals' identities and proclivities are frequently unknown until their apprehension. The appellants cite no cases which have imposed such a burden on po-

lice agencies. We therefore decline the invitation to adopt such a rule.

Finally, appellants urge that the law enforcement techniques used in this case were fundamentally unfair and therefore violated the mandate of the Due Process Clause of the Fifth Amendment. This contention is, in the main, simply a constitutional reiteration of the entrapment defense unsuccessfully submitted to the jury.

Appellants contend that Quinn, in his role as an informant, was a government agent who got out of control due, in part, to the government's failure to adhere to its own guidelines for using informants. Appellants assert that Quinn thereafter induced them to commit a crime which they were not predisposed to commit.

As appellants concede, the entrapment defense is not of constitutional origin. *United States v. Russell*, 411 U.S. 423, 428–430, 93 S.Ct. 1637, 1641–42, 36 L.Ed.2d 366 (1973). Rather, it is a defense which focuses on the intent or predisposition of the defendant to commit the crime. *Id.* at 429, 93 S.Ct. at 1641. Entrapment is an issue which was properly submitted to the jury in this case as part of its function in determining guilt or innocence. *But see Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (evidence so overwhelming that court concluded defendant was entrapped as a matter of law). The jury, under fair instructions, resolved this issue against each of the appellants beyond a reasonable doubt, thereby also resolving the issues of agency, inducement, and predisposition. The evidence of entrapment in this case was not so strong as to take the issue away from the jury.

■ The use of informants to supply information is a recognized and permissible means of investigation. *United States v. Lard*, 734 F.2d 1290 (8th Cir.1984); *United States v. Russell*, 411 U.S. at 432, 93 S.Ct. at 1643. *See also United States v. Quinn*, 543 F.2d 640, 648 (8th Cir.1976). In the case at bar, the FBI agents repeatedly told the informant Quinn not to engage in any criminal activity, and specifically told him not to become involved in any kind of robbery. The record shows that the authori-

ties did not learn of Quinn's involvement in the credit union robberies until after the fact of the September 11, 1985 robbery which gave rise to appellants' convictions. The record further shows that Quinn simply chose to disobey the instructions given him by the FBI agents.

This type of government conduct stands in stark contrast to the law enforcement conduct condemned by the court in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), where government agents illegally broke into the privacy of the petitioner, engaged in a physical struggle to open his mouth and remove its contents, and forcibly extracted the contents of his stomach. *Id.* at 172, 72 S.Ct. at 209.

We conclude that the instant case falls far short of presenting the court with a situation where the conduct of law enforcement agents was "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. at 431, 432, 93 S.Ct. at 1642, 1643, *citing Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

**B. Was Robinson's Gun A § 921(a)(3) Firearm?**

Robinson asserts that his convictions for violating 18 U.S.C. §§ 922(h)(1) and 924(c) cannot stand because the gun he used in the commission of the offense was not a firearm within the meaning of 18 U.S.C. § 921(a)(3). In support of this contention, he asserts that the gun was inoperable because it had no firing pin, and that the cylinder did not line up properly with the gun barrel.

■ Section 921(a)(3) does not require a firearm to be operable. *United States v. Harris*, 792 F.2d 866, 868 (9th Cir.1986), *citing United States v. Goodheim*, 686 F.2d 776 (9th Cir.1982). Rather, under the plain language of the statute, it is enough

that the "weapon ... is designed to ... expel a projectile by the action of an explosive...." 18 U.S.C. § 921(a)(3). Appellant does not contend that the weapon used here was not designed to expel a projectile by the action of an explosive, nor does it appear that he reasonably could make that argument on the basis of the record in this case. This claim of error is thus without merit.

■ Appellant Robinson further urges that his gun was inoperable and incapable of firing, and therefore that his armed robbery conviction under 18 U.S.C. § 2113(d) must be vacated.

In *McLaughlin v. United States*, 476 U.S. 1, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), the Court held that an unloaded gun was a "dangerous weapon" for purposes of § 2113(d). In drawing this conclusion, the Court stated that:

> [A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*Id.* 106 S.Ct. at 1678.

Accordingly, we conclude that this claim is without merit.

**C. Applicability of § 924(c)**

Appellants' sentences were enhanced under 18 U.S.C. § 924(c), which this court recently recognized as specifically authorizing cumulative punishment.[2] *United States v. Doffin*, 791 F.2d 118, 121 (8th Cir.1986).

---

2. *18 U.S.C. § 924(c) provides in pertinent part:* Whoever, during and in relation to any crime of violence, including a crime of violence ... which provides for an enhanced punishment if committed by the use of a deadly or danger- ous weapon or device ... uses or carries a firearm, *shall, in addition to* the punishment provided for such crime of violence ... be sentenced to imprisonment for five years. **18 U.S.C. § 924(c) (emphasis added).**

■ Appellants contend that November 1, 1986, was the effective date of § 924(c). They, therefore, assert that it was error to apply this provision to their cases where the substantive offense occurred on September 11, 1985, more than a year before the effective date of the provision.

In making this assertion, appellants apparently rely on an effective date provision set forth in § 235(a)(1) of the Comprehensive Crime Control Act of 1984 ["Act"]. Section 235(a)(1) of the Act provides that "[t]his chapter shall take effect on the first day of the first calendar month beginning twenty-four months after the date of the enactment [i.e., November 1, 1986]...."

Section 235 was enacted as part of Chapter II of the Act. The amendment to 18 U.S.C. § 924(c), which is the subject of the instant claim, is not part of Chapter II of the Act, but rather was enacted under Chapter X of the Act. Pub.L. 98–473, § 1005, 98 Stat. 1837, 2138 (1984).

The Act was signed into law on October 12, 1984. Absent explicit provision to the contrary, an act takes effect on the date of its enactment. *United States v. Shaffer*, 789 F.2d 682, 686 (9th Cir.1986); *United States v. Affleck*, 765 F.2d 944, 948 (10th Cir.1985). Because there is no explicit provision setting forth an effective date for the amendment to 18 U.S.C. § 924(c), we hold that it became effective on October 12, 1984, and was, therefore, correctly applied in the case of each appellant.

### D. Trial Use of Robinson's Confession

The next matter for review arises from the admission of testimony concerning a confession Robinson gave to an FBI agent on September 12, 1985.

Immediately after his arrest, on September 11, 1985, Robinson, voluntarily and after appropriate *Miranda* warnings, told the FBI agents that he did not know anything about the Carpenters Credit Union robbery. However, on September 12, 1985, he confessed his involvement in the robbery to one of the FBI agents. Due to the manner in which it was procured, Robinson asserts that this September 12th confession was involuntary, and it is this confession which Robinson contends was inadmissible for any purpose, including impeachment. The magistrate who heard Robinson's suppression motion recommended that the September 12th inculpating confession be suppressed.[3]

Robinson's voluntary false exculpatory statement of September 11, 1985, became part of the testimonial evidentiary record introduced through the prosecution's direct examination of one of the FBI agents (Goergen Tr. 218–221). On cross-examination of the FBI agent, Robinson's counsel then elicited testimony about Robinson's own true confession of September 12, 1985.

■ The record in this matter demonstrates that Robinson introduced testimony about the September 12th confession in order to bolster his defense of entrapment or coercion, and to minimize the damaging effect of the false exculpatory statement he made on September 11th. Robinson essentially made the argument that upon being arrested on September 11, 1985, he was too scared to tell the truth, but that he "came clean" the next day. Even assuming, arguendo, that the confession was involuntary, Robinson himself came forward in the first instance with this confession. Having offered it in such a manner as to implicitly assert its veracity, Robinson cannot be heard to object to the prosecutor thereafter probing the veracity of his confession.[4] To the extent that it was error to admit any part of the testimony about the confession, "[i]t is fundamental that where the defendant 'opened the door' and 'invited error' there can be no reversible error." *United States v. Steele*, 610 F.2d 504, 505

---

3. The government asserts that the confession was voluntary. Because we conclude that the statements made in the confession were first introduced by Robinson himself and therefore properly in evidence, we need not reach the issue of voluntariness nor whether we can even properly review the voluntariness issue.

4. The record demonstrates that the prosecution did not extensively delve into the September 12, 1985 confession, but rather used it only to point out a contradiction between Robinson's direct testimony and his statements of September 12th regarding who gave him a gun.

(8th Cir.1979), *citing United States v. Drake,* 542 F.2d 1020, 1022 (8th Cir.1976), *cert. denied,* 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977). Robinson himself first elicited testimony about his September 12th confession, and also gave direct testimony which was inconsistent with the contents of the confession. We agree with the district court that these statements may properly be used for impeachment purposes and conclude their use in this case was fair. *See Mitchell v. Wyrick,* 698 F.2d 940, 943 (8th Cir.1983).

### E. Sentencing Rule 32

The next issue for review is the assertion that the trial court erred in the sentencing of appellant York.

 York's claim of error on this point is twofold. He first asserts that the court committed constitutional error by considering allegations that he was involved in other criminal activity. The prosecution version of the offense, contained in the presentence report, alleged that York participated in several other unprosecuted credit union robberies. York alleges that these allegations are based on uncorroborated hearsay testimony, and that it was error for the court to consider these allegations without conducting an evidentiary hearing to determine their reliability, unless there was some additional corroboration. This assertion is without merit. A sentencing judge has broad discretion as to the type of information he may consider, as well as its source. Uncorroborated hearsay evidence and unprosecuted criminal activity are both proper topics for the court's consideration, as long as the defendant is afforded an opportunity to explain or rebut the evidence. *United States v. Papajohn,* 701 F.2d 760, 763 (8th Cir.1983). The sentencing transcript shows that York was given that opportunity in this case and that he exercised it at some length. "Due process does not mandate an evidentiary hearing to establish the accuracy of ... information contained in a presentence report before it can be considered by a trial court." *Id.* at 763, *citing Farrow v. Unit-*ed *States,* 580 F.2d 1339, 1360 (9th Cir. 1978).

 For his second claim of sentencing error, York contends that the sentencing judge failed to make findings as to the reliability of the prosecution version of the offense as set out in the presentence report. Specifically, York contends that no findings were made with regard to allegations that he was involved in other credit union robberies. Fed.R.Crim.P. 32(c)(3)(D) provides:

> If the comments of the defendant and defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

On February 21, 1986, the sentencing judge entered an order which accepted the prosecution's version of the offense whole cloth, finding that version to be consistent with the evidence introduced at trial and consistent with the jury's verdict. We find that this substantially complies with the foregoing requirement, and we therefore reject York's assertion that the sentencing judge did not comply with Rule 32(c)(3)(D).

### F. Other Crimes Evidence

The next matter for the court's review is York's assertion that the trial court erred in admitting evidence of York's involvement in other crimes. York contends that assertions of his participation in other crimes was not established by clear and convincing evidence. Additionally, he urges that the probative value of this evidence was substantially outweighed by its prejudicial impact.

Appellant York correctly asserts that the evidence of the other act must be clear and convincing, and that the probative value of the evidence must not be substantially outweighed by the potential unfair prejudice. *United States v. Pierce*, 792 F.2d 740, 743 (8th Cir.1986); *United States v. Nabors*, 761 F.2d 465, 470–71 (8th Cir.1985).

In the instant case, Quinn, the third defendant who pled guilty, testified that York was involved in seven additional robberies as well as other planned robberies. York urges that any evidence coming in through Quinn could not be clear and convincing in light of Quinn's previous admitted lies, together with his "arrangements made with the government to induce his testimony."

■ "Direct testimony of the defendant's participation in the prior transactions is sufficient to meet the clear and convincing standard," *Llach v. United States*, 739 F.2d 1322, 1327 (8th Cir.1984), as is direct testimony as to admissions of a defendant. *United States v. Nabors*, 761 F.2d at 471. The district court has broad discretion in making evidentiary rulings of this nature, and its decision will not be set aside absent a clear showing of abuse. *United States v. Pierce*, 792 F.2d at 743. While the record in this matter reveals that Quinn has multiple felony convictions, we are unable to conclude that his prior criminal activity, his involvement as an informer for the government, and his own plea bargain renders his testimony insufficient, per se, to fulfill the clear and convincing prerequisite to admission of evidence of other crimes. Appellant York has not made a clear showing that the requirements of Rule 404(b) were not met. *Pierce*, at 743. In this case, the other crimes evidence was relevant to meet the defendant's entrapment and coercion claims, to prove York's predisposition, his knowledge and his intent, as well as to prove a common scheme or plan. The

court gave correct instructions to the jury as to the limited use to which such evidence could be put. Accordingly, we find no error requiring reversal on this point.

### G. Ex Parte Communication Between Judge and Jury

As his next ground for error, appellant York asserts that the trial court received and answered a jury question without first notifying and obtaining the presence of his counsel and himself. The jury posed the following question, in pertinent part: "Can we find York guilty on Count II even though he may not have carried a gun?" The court's response was as follows: "In answer to your question I refer you to pages 31–33 of my instructions."

Appellant contends that this ex parte communication violated his right, as set out in Fed.R.Crim.P. 43 and 44, to be present and to have counsel present at all stages of the proceedings. Additionally, appellant York contends that his rights under the Sixth Amendment were violated by the ex parte communication.[5]

While York does not contend that the court incorrectly instructed the jury on the law of aiding and abetting, he asserts that he was prejudiced by the location of the instruction to which the jury was referred. Specifically, he asserts that the jury was referred to pages 31–33 of the instructions, and that those pages are located amidst instructions which generally bear upon Count 1 of the Indictment. York asserts that reference to an instruction also applicable to Count 1 might have confused the jury to such an extent that a conviction upon Count 1, even for a lesser included offense, would warrant a conviction on Count 2.[6]

■ It is settled law in this circuit that communications between judges and jury

---

5. Appellant York has not elaborated on the specific source of the claimed Sixth Amendment violation. While it appears that the instant constitutional argument is premised upon a deprivation of the right to counsel, it may also be grounded upon the right of confrontation, *see Jackson v. Hutto*, 508 F.2d 890, 891 (8th Cir. 1975), or the right to a public trial, *see, e.g., United States v. Widgery*, 778 F.2d 325, 329–30

(7th Cir.1985). Regardless of the particular source of the claimed right, the court finds the error harmless with the facts here presented.

6. York was convicted of the principal offense charged in Count 1, rather than a lesser included offense.

in the absence of the defendant and his counsel are improper, and presumptively prejudicial. *United States v. Mesteth,* 528 F.2d 333, 335 (8th Cir.1976); *United States v. Treatman,* 524 F.2d 320, 323 (8th Cir. 1975); *Jackson v. Hutto,* 508 F.2d 890, 892 (8th Cir.1975); *Rice v. United States,* 356 F.2d 709, 716–17 (8th Cir.1966). The presumption may be overcome "by evidence giving a clear indication of lack of prejudice." *United States v. Mesteth,* 528 F.2d at 335 (citations omitted).

 When reviewed against this standard, we are satisfied that the presumption of prejudice is overcome. The aiding and abetting instructions in question are completely neutral as between Counts 1 and 2, and contain no independent reference to Count 1. Moreover, they are equally applicable to both Counts 1 and 2 since each count alleged an aiding and abetting theory. The court's ex parte communication did nothing more than direct the jury to the neutral correct explanation of the law of aiding and abetting. The jury was instructed to consider each count separately, and there is no dispute as to the correctness of the instruction. On these facts, the court holds that there was no possibility of confusion, and therefore that there was no reasonable possibility of prejudice.

## H. Prosecutor's Comment on York's Silence

 The next issue for review is York's objection to prosecutorial comment upon his silence. During closing arguments, the prosecutor made the following remark: "And never, never once did [York] tell the police or the FBI about this terrible thing that Quinn had done to him and Robinson."

Citing *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), York argues that the prosecutor's remarks were an impermissible comment upon his post-arrest, post-*Miranda* silence. While acknowledging appellee's assertion that these remarks pertained to York's pre-arrest, pre-*Miranda* silence, York nevertheless contends that the language "never, never once ..." is not as restrictive as asserted by appellee, and therefore impermissibly

implicates the post-arrest, post-*Miranda* silence protected by *Doyle.*

This claim is quickly resolved by reference to the context within which the offending statement was made. The arguments leading up to the remark in question all pertain to rebutting York's defense of coercion. Specifically, in the six pages of transcript immediately preceding the remark, the prosecutor emphasized the inconsistency of a coercion defense with the actions of the defendants. He argued that upon crashing the vehicle used to flee from the site of the crime, York and Robinson abandoned the car and continued to flee on foot. He argued that upon taking flight on foot, "York and Robinson lose Quinn, who has this rickety knee, right away. They don't go back to the car, however, where they know there are police officers to protect them from the vicious Quinn." Transcript, p. 720. The prosecutor further contended that after "losing" Quinn, York and Robinson continued running and hiding from the police, discarding their jackets so as to hinder identification or recognition. Again on page 721 of the Transcript, the prosecutor argues, "They don't ever run from Mr. Quinn." On page 723, the prosecutor pointed out how defendant Robinson had several clear pre-arrest opportunities out of the presence of Quinn to tell other parties that he was being coerced by Quinn. Again on pages 725 and 726, the prosecutor argued that these defendants were claiming to have been coerced, and he emphasized all the independent planning done by York in furtherance of the robbery, and again, the running and hiding from the police. It is at this moment that the comment in question was made, and in our view the comment clearly refers to York's failure to come forward during those pre-arrest snapshots of time when York was free from Quinn. The trial court, having personally observed the argument as made, was of a similar view.

York, in his reply brief, argues that even if the prosecution permissibly commented upon pre-arrest silence, the comment impermissibly drew attention to York's exercise of his right not to incriminate himself.

■ To the extent that the prosecutor's comment may have drawn any attention to York's decision not to testify, any possible potential for damage in that respect was cured by the trial court's immediate admonition that the defendant had the right not to testify, and that the jury was to disregard any remarks which could be construed as a comment upon that right.

For the foregoing reasons, we conclude that the comment on York's pre-arrest silence was not error, and the trial court's admonition cured any potential for jury confusion impinging upon York's exercise of his right to remain silent.

## III. CONCLUSION

Having considered each of the appellants' separate grounds for reversal of his individual convictions and having concluded that neither appellant has shown any error which would entitle him to relief, we affirm each appellant's convictions and sentences.