# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3125

_____

United States of America,

        Appellee,

v.

Frank McCaster,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United
States District Court for
the District of Minnesota.

_____

Submitted:  March 9, 1999

Filed:  October 12, 1999

_____

Before BEAM and HEANEY, Circuit Judges, and GOLDBERG,[1] Judge of the
United States Court of International Trade.

_____

BEAM, Circuit Judge.

After a jury trial, Frank McCaster was convicted of possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(B).

---

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

He appeals the district court's[2] denial of his motion to suppress evidence and to suppress statements. We affirm.

## I. BACKGROUND

Frank McCaster lived in a duplex at 3326 Penn Avenue North in Minneapolis. Pursuant to a valid warrant authorizing a search of his apartment, "including garages, outbuildings and curtilage,"[3] police officers searched McCaster's apartment. They found a small quantity of crack cocaine in a ceramic statue in the apartment. They also searched a hall closet in a common area at the back of the duplex. The closet was shared by the other tenant of the duplex. The officers found over six grams of crack cocaine in the closet.

After the drugs were found, the officers informed McCaster that he was under arrest and asked him to cooperate. After giving a Miranda warning, the officers questioned McCaster. He waived his Miranda rights and gave a statement that was recorded on audiotape. McCaster admitted that the crack cocaine, including that found in the closet, belonged to him. He further admitted that, although the crack cocaine found in the ceramic statue was for his personal consumption, he intended to sell the crack cocaine found in the closet. After the recorded interview, McCaster agreed to cooperate regarding his supplier. Based on that representation, McCaster was not taken into custody but was allowed to attend his son's out-of-town football game that

[2]The Honorable Bruce M. Van Sickle, United States District Judge, adopting the report and recommendation of United States Magistrate Judge John M. Mason.

[3]Curtilage originally referred to the land and outbuildings immediately adjacent to a castle that were in turn surrounded by a high stone wall; today, its meaning has been extended to include any land or building immediately adjacent to a dwelling, and usually enclosed in some way by a fence or shrubs. See Black's Law Dictionary 384 (6th ed. 1990).

weekend. When it later became clear that he would not cooperate with the police, he was arrested.

Before trial, McCaster moved to suppress the crack cocaine seized from the closet and to suppress his statement. He contended that the search of the closet was not authorized by the search warrant and that his statement was the result of improper police coercion and was thus involuntary. After a hearing on the motions to suppress, the magistrate judge recommended that they be denied. The magistrate judge found that the search warrant authorized search of the closet as "curtilage." He further found that, even if the search warrant did not adequately describe the area, the evidence was nonetheless admissible since the officers' reliance on the warrant was objectively reasonable. The magistrate judge also found no evidence of improper coercion by the officers, and thus found McCaster's statement admissible. Over McCaster's objection, the district court adopted the report and recommendation of the magistrate judge.

McCaster was tried by a jury and convicted of one count of possession with intent to distribute crack cocaine. The district court sentenced him to 120 months' incarceration, finding the government had shown that he possessed over six grams of crack cocaine. On appeal, McCaster challenges the admission of the crack cocaine seized from the closet and the admission of his statement. He contends the district court erred in finding that the search warrant authorized search of the closet and in finding that his statement was voluntary.

## II.    DISCUSSION

McCaster argues that the closet does not fall within the definition of "curtilage," authorized to be searched in the warrant. He contends that historical definitions of curtilage are not applicable in the context of urban, apartment-style living. We need not decide whether common areas of a multi-unit dwelling are always included in the term "curtilage," for we find that whatever the modern-day urban equivalent of

curtilage, the evidence found in the hall closet was properly admitted in this case. If the closet is within the apartment's curtilage, the warrant specifically authorizes the search. If the closet is not part of the apartment's curtilage, McCaster has shown no expectation of privacy to give him standing to challenge the search and the admission of the evidence found therein.

We may affirm the judgment on any grounds supported by the record, even if not relied on by the district court. See Monterey Dev. v. Lawyer's Title Ins. Co., 4 F.3d 605, 608 (8th Cir. 1993). Assuming for the sake of argument that the area is not curtilage, and thus not covered by the warrant, to challenge the constitutionality of the search, McCaster must demonstrate that he possessed a legitimate expectation of privacy in the particular area searched. See United States v. Nabors, 761 F.2d 465, 468 (8th Cir. 1985). Fourth Amendment rights may not be vicariously asserted. See id. In order to show a legitimate expectation of privacy in the searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept. See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990) (recognizing that an overnight guest has a reasonable expectation of privacy); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). Several factors are relevant to this showing: whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises. See, e.g., Rawlings v. Kentucky, 448 U.S. 98, 105 (1980); Nabors, 761 F.3d at 469. We have rejected the notion of a generalized expectation of privacy in the common areas of an apartment building. See United States v. McGrane, 746 F.2d 632, 634 (8th Cir. 1984).

Our review of the record shows that McCaster has failed to prove that he had a legitimate expectation of privacy in the hall closet. His assertion that the closet is not within the curtilage of his apartment undermines his assertion of an expectation of

privacy in the closet.  Moreover, he disavowed any possessory interest in the contents of the closet,[4] failed to show any efforts to exclude others from the space, or any precautions to maintain privacy.  The evidence showed that two other tenants, as well as the landlord, had access to the closet.  In short, the evidence presented at the suppression hearing supports a finding that McCaster had no reasonable expectation of privacy in the hall closet.  Under these circumstances, McCaster has no standing to challenge the search.  To hold otherwise would allow a criminal to keep contraband from the legitimate reach of law enforcement by the simple act of storing it in a shared common area.

Finally, even if McCaster had shown an expectation of privacy in the closet, the evidence establishes that it was objectively reasonable for the officers to search the closet in reliance on the warrant.  Evidence seized even through a deficient warrant is still admissible if officers executing the warrant were objectively reasonable in relying upon it.  See United States v. Leon, 468 U.S. 897, 922 (1984).  We agree that the close proximity of the area to McCaster's living quarters and its enclosure within the duplex unit supports the finding that it was reasonable for the officers to believe that the area fell within the scope of the warrant.

McCaster next challenges the admission of his recorded statement, contending that it was not voluntary.  In this context, we review the district court's findings of fact for clear error, and its determination of voluntariness de novo, considering all the circumstances surrounding the confession.  See United States v. Ingle, 157 F.3d 1147, 1150 (8th Cir. 1998).  When a defendant's will is overborne by coercive police activity,

---

[4]Despite his initial admission that he owned the crack cocaine, McCaster argued in his objections to the magistrate judge's report and recommendation that "no items belonging to McCaster were found in the 'room'" (emphasis in original).  He later testified at trial that the cocaine found in the statue belonged to a visiting girlfriend and McCaster's counsel argued that the cocaine found in the closet must have been left there by former tenants.

the resulting confession is inadmissible.  See Arizona v. Fulminante, 499 U.S. 279, 288 (1991).  The magistrate judge found that the officers had not employed improper coercive tactics.  We have reviewed the testimony and agree that there is no evidence of improper coercion.  The fact that the government encouraged McCaster to cooperate, and then allowed him to remain at home rather than booking him, does not establish the kind of coercive police activity that renders a confession involuntary.  See Colorado v. Connelly, 479 U.S. 157, 163-67 (1986).  Tactics such as these will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.  See Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993).  The fact that McCaster had been given the Miranda warning is another factor that weighs in favor of the finding that the statement was voluntary.  See United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996).

## III.  CONCLUSION

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that the search of the closet was lawful because the closet area was within the apartment's "curtilage."  There is, however, no reason for the majority to opine in dicta that McCaster did not have a reasonable expectation of privacy in the duplex's common closet   Because they unnecessarily reach this conclusion, I am forced to dissent.

In my view, a tenant in a duplex has a reasonable expectation of privacy in common areas shared only by the duplex's tenants and the landlord.  Three cases in our circuit have directly addressed this issue.  See United States v. McGrane, 746 F.2d 632 (8th Cir. 1984); United States v. Luschen, 614 F.2d 1164 (1980); and United States v. Eisler, 567 F.2d 814 (8th Cir. 1977).  Both McGrane and Luschen follow Eisler and

hold that a tenant does not have a reasonable expectation of privacy in the common areas of an apartment building. See Eisler, 567 F.2d at 816; McGrane, 746 F.2d at 634; Luschen, 614 F.2d at 1173. Each of these cases is distinguishable from the facts of this case.

Eisler was the first case to address this issue directly. In Eisler, a DEA agent entered the defendant's apartment complex and surveyed the defendant's apartment from a common hallway. 567 F.2d at 816. From that location, the agent overheard conversations coming from the defendant's apartment. See id. The court held that because the common hallways were available for use by all residents and their guests, as well as the landlord and his agents, the defendant had no reasonable expectation that his conversations, heard from the common hallway, would be free from intrusion. See id.

In McGrane, a DEA agent entered the basement of the defendant's apartment building and looked in the defendant's storage locker. 746 F.2d at 633. The agent saw containers of a chemical used in manufacturing a controlled substance. See id. Following Eisler, the court held that the defendant had no reasonable expectation of privacy in the basement because it was a common area of the building accessible to all tenants and the landlord. See McGrane, 746 F.2d at 634.

In Luschen, a police officer surveyed the defendant's apartment from the second-floor landing near his apartment door. 614 F.2d at 1167. Also following Eisler, the court held that the surveillance did not constitute an illegal search because a person has no reasonable expectation of privacy in halls and common areas of apartment buildings. See Luschen, 614 F.2d at 1173.

These cases are distinguishable from the facts of this case. First, McCaster lived in a duplex, where only he and the upstairs tenants resided. (See Appellant's Br. at 8.) Eisler, McGrane and Luschen involved multiple-unit apartment buildings with more

than two tenants.  See Eisler, 567 F.2d at 815-16; McGrane, 746 F.2d at 633; Luschen, 614 F.2d at 1167.  Hence, fewer individuals had access to the common area in this case than in our prior cases.

Second, the common area in this case was a closet shared by McCaster, the upstairs tenants, and the landlady.  Unlike a hallway or basement, the closet was isolated.  It was located under the stairs that led to the upstairs apartment and was used as a storage area for the tenants and the landlady.  (Tr. of May 22, 1998, at 22.)  As a storage area, the closet likely would not be accessed by anyone other than the tenants and landlady and would certainly not be accessed as frequently as a hallway or basement.  Thus, accessibility to the closet was more limited than the hallways or basement addressed in our prior cases.

Third, the facts of this case are similar to United States v. Fluker, 543 F.2d 709 (9th Cir. 1976), a case we distinguished in Eisler.  See Eisler, 567 F.2d at 816.  In Fluker, the court held that the defendant had a reasonable expectation of privacy in the corridor separating the door of his apartment from the outer doorway of the apartment building.  543 F.2d at 1176.  The court noted that the defendant lived in a building with only two other tenants and that access to the entryway was limited as a matter of right to the two basement tenants.  See id.  Furthermore, the outer door was always locked, with only the building's three tenants having keys.  See id.  Based on these facts, the court found that the two basement tenants exercised "considerably more control over access to that portion of the building than would be true in a multi-unit complex, and hence could reasonably be said to have a greater reasonable expectation of privacy than would be true of occupants of large buildings."  Id.

Similar to the defendant in Fluker, McCaster's building consisted of only two units.  Both the front and back doors of the duplex had locks, and only the tenants and the landlady had access to the duplex.  (See Appellant's Br. at 12.)  Further, the closet was shared only by the tenants and the landlady.  Thus, because the right to access to

the duplex and use of the closet was limited to these individuals, McCaster could reasonably have expected greater privacy than if he resided in a multiple-unit building.

The nature of the living arrangement in a duplex, as opposed to a multi-unit building, leads me to conclude that a tenant in a duplex has a reasonable expectation of privacy in common areas shared only by the duplex's tenants and the landlady.

In so concluding, I must address the majority's last point on this issue. The majority states that if it were to hold as I would that McCaster had a reasonable expectation of privacy under these circumstances, it "would allow a criminal to keep contraband from the legitimate reach of law enforcement by the simple act of storing it in a shared common area." I find no support in decided cases for this proposition. Holding that a tenant in a duplex has a reasonable expectation of privacy in the common areas of the duplex only provides the tenant with standing to challenge a warrantless search. It simply requires law enforcement to obtain a warrant before searching such areas. It by no means provides criminals a safe harbor for their contraband.

For these reasons, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.