409 So.2d 1222 (1982)
STATE of Florida, Appellant,
v.
Murray C. MALLORY, Appellee.
No. 79-1957.
District Court of Appeal of Florida, Second District.
February 24, 1982.
Jim Smith, Atty. Gen., Tallahassee, and G.P. Waldbart and David T. Weisbrod, Asst. Attys. Gen., Tampa, for appellant.
John D. Fernandez, and Sondra Goldenfarb, Clearwater, for appellee.
HOBSON, Acting Chief Judge.
We relinquished jurisdiction in this case with directions to the trial court to determine the issue of appellee Mallory's reasonable *1223 expectation of privacy in the area searched. After hearing, the court entered an order holding that Mallory had a reasonable expectation of privacy and thus had legal standing within the contemplation of U.S. v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and Brady v. State, 394 So.2d 1073 (Fla. 4th DCA 1981). Upon review of the record in this cause, which includes a transcript of the hearing on remand, we reverse and hold that Mallory did not demonstrate the requisite expectation of privacy in order to maintain standing. Thus, the trial court erred in granting Mallory's motion to suppress evidence.
The following facts are pertinent to our determination:
Murray Mallory resides in Zephyrhills, Florida. In May, 1979, Mallory was arrested in the home of codefendant Ed Moyer in Clearwater, Florida, and subsequently charged with conspiracy to sell cocaine, trafficking in cocaine and possession of marijuana. The arrest was effected subsequent to a plan initiated by the Clearwater Police Department in which a confidential informant set up a cocaine sale at the Moyer home. The informant was equipped with a "body bug" so that the police surveillance team outside the house could hear the conversation among the informant, Mallory and Moyer. After the informant had left the house to summon the "money man," the police officers decided to move in. Moyer was arrested just outside the front door, and Mallory was apprehended while attempting to dissolve a package of cocaine in the bathtub.
At the hearing on standing, Mallory testified that he and Moyer had been close friends for eight or nine years and that he had been an overnight guest in the house several times. He stated that Moyer left a hidden key which Mallory could use at will to enter the house. Some of Mallory's personal effects were kept in Moyer's closet. Mallory further stated that he did not contribute to the rent or utilities, but shared expenses for food during his visits. He also felt free to deny admittance to the house to third parties when he was alone there.
The starting point for any consideration of standing to challenge the search of a dwelling is U.S. v. Salvucci. In that case the Supreme Court overruled the "automatic standing" rule of Jones v. U.S., 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960), and held that a defendant charged with a crime of possession can claim the benefits of the exclusionary rule only if his own Fourth Amendment rights have in fact been violated. This occurs when the person can demonstrate a reasonable expectation of privacy in the area which was searched.
Mallory directs us to the cases of State v. Sarmiento, 397 So.2d 643 (Fla. 1981), and Brady v. State in support of his claim to a reasonable expectation of privacy in Moyer's house. Sarmiento dealt with the issue of whether the warrantless, electronic interception by state agents of a conversation between defendant and an undercover police officer in defendant's home was an unreasonable interception of defendant's private communication. Our supreme court held that the defendant enjoyed a reasonable expectation of privacy that no one else was listening to the conversation in his home other than the undercover officer and others present in the home. The case clearly stands for the proposition that a person has an expectation of privacy in his own home, particularly where police have ample opportunity to obtain a warrant.
The Fourth District Court of Appeal recently held in Brady v. State that the defendant had a reasonable expectation of privacy in a friend's apartment. The defendant had moved out of her own apartment the day before her arrest. The court stated:
Brady was not only an overnight house-guest, she had moved all of her belongings into the apartment and expected to remain since she had no money, and had previously been allowed to stay in the apartment.... Brady had no home elsewhere. Under these circumstances, we believe she had a reasonable expectation of privacy in the premises that she was, in effect, sharing with her friend.
*1224 The facts of the instant case are distinguishable from those in the Brady decision. Murray Mallory had a permanent place of residence in Zephyrhills and was no more than a visitor in the Moyer home. Although ownership is not the only criterion in determining the privacy question, it is certainly important to note that Mallory claimed no financial or ownership interest in the residence. Further, there was nothing in the testimony to indicate that Mallory spent other than an occasional night as Moyer's guest. Mallory stated that he was free to come into the house during the day when Moyer was absent and had done so many times. Again, there is no indication of permanence in this arrangement. Moyer's house was not Mallory's place of residence, despite his freedom of ingress and the fact that he kept personal belongings there.
The central theme in all the cases cited to us is the fact that the defendants considered the residence in question their "home." It matters not whether the "home" is permanent or temporary as long as it was the place where the defendants were living at the time of the search. Mallory was clearly not living at Moyer's house, even though he felt welcome there at any time.
For the reasons stated above, we reverse the order granting Mallory's motion to suppress evidence and remand the cause for further consideration consistent with this opinion.
RYDER, J., and CARLTON, CHARLES T., Associate Judge, concur.