842 So.2d 897 (2003)
Malik Abdul McCAULEY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-187.
District Court of Appeal of Florida, Second District.
February 12, 2003.
*898 James Marion Moorman, Public Defender, and Gonzalo Alberto Gayoso, Special Assistant Public Defender, Bartow, for Appellant.
Charlie Crist, Attorney General, Tallahassee, and Ha T. Dao, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Malik Abdul McCauley seeks review of the trial court's order denying his motion to suppress and his conviction for aggravated assault with a firearm. McCauley's challenge to the denial of his motion to suppress has merit if he can establish that he has standing to raise such a challenge. Accordingly, we reverse and remand for a determination on that issue. We find McCauley's remaining challenge to his conviction to be without merit and decline to comment on that issue.
On February 24, 1999, the State charged McCauley with aggravated assault with a firearm, possession of a firearm by a felon, opposing a police officer without violence, and possession of a forged Georgia identification card. The arrest arose from allegations that McCauley threatened the victim with a firearm. Once arrested, McCauley allegedly produced a fake identification card and confessed to possessing the firearm. Prior to trial,[1] McCauley moved to suppress all evidence seized from the home of his girlfriend's mother.
At the hearing on the motion to suppress, Tampa Police Officer Curabba testified that on February 4, 1999, at approximately 7 p.m., he and Officer Bercaw responded to an aggravated assault call involving the victim. Officer Bercaw interviewed the victim, and she accused McCauley of threatening her with a fire-arm. *899 Officer Curabba then went to the home of McCauley's girlfriend's mother, Josephine Penn, and arrested McCauley in the front room. Penn was not present at the time of McCauley's arrest, but there were several other people inside the home, including McCauley's girlfriend, Judean Michelle Forbes.
Shortly after McCauley's arrest, Forbes went to retrieve her infant child from a bedroom in the back of the home. Officer Curabba decided to conduct a protective sweep of the home, and he and Officer Bercaw followed Forbes to the bedroom. When asked whether there were any weapons in the home, Forbes responded that there was a firearm in the bedroom. Officer Curabba then looked under the mattress of a bed in the bedroom and found a firearm. He did not obtain Forbes' consent to search the room prior to looking under the mattress. Penn arrived just after McCauley had been arrested and the firearm discovered, and she signed a consent to search the home.
Forbes denied telling the officers that there was a firearm under the mattress. She also asserted that McCauley had not possessed a weapon during the earlier incident with the victim. Penn testified that she signed the consent under duress after being threatened by the police.
The trial court denied McCauley's motion to suppress without making any findings; thus our review of the order is de novo. State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). Of course, we must interpret the evidence and deductions drawn therefrom in the manner most favorable to sustaining the trial court's ruling. Murray v. State, 692 So.2d 157, 159 (Fla.1997).
The State raises several bases for upholding the search and seizure in this case. First, the State argues that the search was actually a permissible precautionary or protective sweep. However, the police exceeded the permissible limits of either a precautionary or a protective sweep by looking under the mattress in the bedroom. See Runge v. State, 701 So.2d 1182, 1183-84 (Fla. 2d DCA 1997) (holding that the places searched during a precautionary or protective sweep must be places where a person could reasonably be expected to be); see also Meece v. State, 742 So.2d 319, 320 (Fla. 2d DCA 1999) (holding that a search under the cushions of the defendant's couch did not constitute a protective sweep); United States v. Ford, 56 F.3d 265, 271 (D.C.Cir.1995) (holding that a search under a mattress exceeded the scope of a protective sweep).
Second, the State argues that McCauley's girlfriend, Forbes, consented to the search. However, this argument is not supported by the evidence. There was no testimony that Forbes gave the police consent to search the premises. The State cites testimony that Forbes told the police that there was a firearm in the bedroom in support of this argument. However, this statement was not in response to a request to search and does not in itself indicate a consent to search. Moreover, when Officer Curabba was questioned as to whether he was given consent to search, he replied, "I was eventually ... [b]y the owner of the house [Penn]." He did not mention consent by Forbes.
Nor does Penn's after-the-fact consent to search justify the search and seizure. It is well-settled that consent obtained after illegal police activity is presumptively tainted and renders the consent involuntary. Connor v. State, 803 So.2d 598, 609 (Fla.2001), cert. denied, 535 U.S. 1103, 122 S.Ct. 2308, 152 L.Ed.2d 1063 (2002); Ingraham v. State, 811 So.2d 770, 774 (Fla. 2d DCA 2002).
*900 The analysis of the above issues demonstrates that the search of the premises in this case was illegal. However, the State also asserts that McCauley lacked a reasonable expectation of privacy in the premises searched and therefore lacked standing to challenge the search. This position appears to be correct because the evidence established that McCauley lived with his father but merely stayed at Penn's home from time to time and was just visiting on the day in question. Cf. State v. Mallory, 409 So.2d 1222, 1224 (Fla. 2d DCA 1982) (holding that defendant who had a permanent residence and was merely a visitor in a third party's home did not have standing to challenge the search of the home even though the defendant kept some clothing there, was free to come and go with the use of a hidden key, and spent occasional nights there as a guest); Noel v. State, 526 So.2d 1052, 1053 (Fla. 3d DCA 1988) (holding that the defendant, who kept a change of clothes at the victim's apartment and stayed there occasionally, did not have standing to challenge a search of the apartment because he had a permanent residence).
Although this point was not argued by the State at the hearing on the motion, the concept of standing has been subsumed into Fourth Amendment issues and can be raised for the first time on appeal. State v. Abeles, 483 So.2d 460, 461 (Fla. 4th DCA 1986); St. John v. State, 400 So.2d 779, 780 (Fla. 1st DCA 1981). Because McCauley was not given an opportunity to prove his interest in the premises below due to the State's tacit concession of standing, we conclude that he is entitled to a hearing on the matter. See Combs v. United States, 408 U.S. 224, 227-28, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972); State v. Hutchinson, 404 So.2d 361, 366 (Fla. 2d DCA 1981); Abeles, 483 So.2d at 461.
We therefore reverse and remand for a new suppression hearing at which the trial court shall address only the issue of standing. If the trial court finds that McCauley established standing, it should grant the motion to suppress based on the fact that the search and seizure was otherwise illegal.
Reversed and remanded.
WHATLEY and COVINGTON, JJ., Concur.
NOTES
[1] The trial court severed the charge of possession of a firearm by a felon, and a jury subsequently acquitted McCauley of that charge. A separate jury convicted McCauley of aggravated assault with a firearm, opposing a police officer without violence, and possession of a forged Georgia identification card. McCauley does not raise challenges to his convictions for opposing a police officer without violence and possession of a forged Georgia identification card on appeal.