FILED
United States Court of Appeals
Tenth Circuit

April 25, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MOSES EARNEST MAESTAS,

Defendant-Appellant.

No. 10-2226

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:09-CR-02050-JEC-1)**

---

Stephen D. Aarons, Aarons Law Firm PC, Santa Fe, New Mexico, for Defendant-Appellant.

John C. Anderson, Assistant United States Attorney (Kenneth J. Gonzales, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Defendant-Appellant Moses Earnest Maestas appeals from the district

court's denial of his motion to suppress evidence—specifically, forty-two grams

of methamphetamine and a handgun—seized from an enclosed garbage storage area. Mr. Maestas argues that he had a reasonable expectation of privacy in the place where the evidence was seized, and that the seizure therefore violated his Fourth Amendment rights. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of Mr. Maestas's motion to suppress.

## BACKGROUND

On June 29, 2009, the Federal Bureau of Investigation and the Albuquerque, New Mexico, police department arranged for an undercover officer to make a controlled purchase of methamphetamine from Mr. Maestas. The law enforcement officers expected the purchase to take place at a triplex residential unit located at 13101 Mountain Road NE in Albuquerque, New Mexico. The Mountain Road residence was rented by a man known as "Road Dog," R., Vol. III, at 8–9 (Suppression Mot. Hr'g Tr., dated Mar. 4, 2010), but Mr. Maestas had spent a considerable amount of time there over the preceding three months.

The officers observed Mr. Maestas pull up in a maroon Nissan Maxima car and enter the residence. Before entering the home, however, he "place[d] a black firearm in the small of his back." R., Vol. I, at 20 (Plea Agreement, filed Mar. 9, 2010). Once inside, Mr. Maestas "pulled out a ziplock bag that contained clear crystalline substance and started running his fingers through the contents of the ziplock bag." *Id.* Mr. Maestas then realized that he needed scales to weigh the drugs, so he gave his brother (who was present at the residence) forty dollars and

2

sent him out to purchase scales.

Shortly thereafter, Mr. Maestas received a phone call informing him that law enforcement had the house surrounded. Mr. Maestas then took the ziplock bag of methamphetamine and went out the back door. As he stepped out, "he looked around," reached "to the small of his back," and walked toward the enclosed garbage storage area adjacent to the residence. R., Vol. III, at 32. Mr. Maestas disappeared momentarily inside the fenced-in area; during that time, the observing officer "could not see him." *Id.* Once he reemerged, Mr. Maestas attempted to re-enter the residence, but the undercover officer had locked him out. Mr. Maestas was then arrested. The officers subsequently searched the enclosed garbage storage area and "discovered a black hand-gun placed near a fence and behind a garbage can" and "a ziplock bag that contained the crystalline type substance inside one of the garbage cans." R., Vol. I, at 21. The bag contained forty-two grams of methamphetamine.

Mr. Maestas was charged with one count of distributing five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), one count of possessing with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(a). Mr. Maestas moved to suppress the methamphetamine and firearm recovered from the property; these items served as

the basis for the second and third counts.[1]  Mr. Maestas argued that he had a reasonable expectation of privacy in the enclosed garbage storage area because (1) he was a guest in the home and, consequently, should be afforded the protections of the Fourth Amendment, and (2) the Fourth Amendment protections applicable to the residence extended to the enclosed garbage storage area, which is within the curtilage of the home.  The district court denied the motion, holding that

> Defendant Maestas failed in his burden to establish a privacy interest in the dwelling and certainly not the exterior, common garbage area where the physical evidence was located. Accordingly, Maestas lacked a subjective expectation of privacy necessary to challenge the search. . . .  [E]ven if Maestas' connection to the home had been less tenuous and he was the type of overnight guest to which Fourth Amendment privacy expectation has been assigned, the items were located i[n] an area shared with other apartment residents where garbage is placed outside for pickup.  Surely Defendant Maestas has established no legitimate, reasonable expectation of privacy in that area.

R., Vol. I, at 30 (Mem. Op. & Order Denying Def.'s Mot. to Suppress, filed Apr. 5, 2010).

Mr. Maestas pleaded guilty to all three counts, reserving his right to appeal the district court's denial of his motion to suppress.  This timely appeal followed.

---

[1]     The first count was based on a June 8, 2009, controlled transaction in which Mr. Maestas sold an officer eighteen grams of methamphetamine.  This transaction and the resulting charge were not implicated by the motion to suppress, and Mr. Maestas does not challenge his conviction on this count on appeal.

4

**STANDARD OF REVIEW**

When reviewing the denial of a motion to suppress, "we consider the totality of the circumstances and view the evidence in a light most favorable to the government." *United States v. Higgins*, 282 F.3d 1261, 1269 (10th Cir. 2002) (quoting *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999)) (internal quotation marks omitted). The district court's factual findings are reviewed for clear error, and "the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo." *Id.* (same). "The burden of proof is on the defendant to demonstrate that he has a reasonable expectation of privacy in the place searched . . . ." *United States v. Johnson*, 584 F.3d 995, 998 (10th Cir. 2009).

**DISCUSSION**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A defendant invoking the protection of the Fourth Amendment "must demonstrate that he *personally* has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (emphasis added); *see also United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009) ("It is well-established that 'the Fourth Amendment is a personal right that must be invoked by an individual.'" (quoting *Carter*, 525 U.S. at 88)). In order to meet this burden, "the defendant must show

5

that he had a subjective expectation of privacy in the premises searched and that 'society is prepared to recognize that expectation as reasonable.'" *Higgins*, 282 F.3d at 1270 (quoting *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995)).

Under the Fourth Amendment, it is axiomatic that people have a reasonable expectation of privacy in their own homes. *Griffin v. Wisconsin*, 483 U.S. 868, 884 (1987). However, "in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Carter*, 525 U.S. at 89. For example, in *Minnesota v. Olson*, the Supreme Court held that an overnight guest has a reasonable expectation of privacy in the home of his host. 495 U.S. 91, 98 (1990). Extending this principle further, this court has "held that a social guest who does not stay overnight has a reasonable expectation of privacy" in the host's property. *Poe*, 556 F.3d at 1122 (citing *United States v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir. 2003)). In order for a social guest to qualify for protection under the Fourth Amendment, there must be a "degree of acceptance into the household," *Rhiger*, 315 F.3d at 1286 (quoting *Carter*, 525 U.S. at 90) (internal quotation marks omitted), or an "ongoing and meaningful connection to [the host's] home" establishing the person's status as a social guest, *id.* at 1287.

On the other hand, "an individual does not possess an expectation of privacy to challenge the search of another's property when he or she is present solely for commercial or business reasons" and otherwise has no meaningful

6

connection with the home. *Id.* at 1286 (citing *Carter*, 525 U.S. at 90–91). More specifically, in *Carter*, the Supreme Court found no expectation of privacy when the defendants were in the home for the sole purpose of packaging cocaine for distribution—they were "not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours," and "[t]here [wa]s no suggestion that they had a previous relationship with [the resident of the home], or that there was any other purpose to their visit." 525 U.S. at 90.

Initially, Mr. Maestas argues that his relationship with Road Dog and the three-month period during which he frequented the residence "established a 'meaningful connection' to the apartment and an expectation of privacy there." Aplt. Reply Br. at 3. Mr. Maestas testified that during the three-month period preceding his arrest he was at the house "on a regular basis," R., Vol. III, at 9, that he frequently "stayed there overnight" when he was using drugs, *id.* at 10, that he would "shower there" and "g[e]t cleaned up there," *id.* at 12, that he would spend time there "talk[ing] to [Road Dog] . . . about life," *id.* at 16, and that "Road Dog [did not] have any problem with the fact that [he] w[as] staying the night there at his Mountain Road residence," *id.* at 10. On the other hand, the government argues that "the record is clear that on the day of his arrest, Maestas was present at the Mountain Road apartment for no purpose other than to conduct an illegal narcotics transaction," and therefore he "had no reasonable expectation of privacy in the Mountain Road apartment." Aplee. Br. at 8.

7

As stated above, the district court concluded that Mr. Maestas's "connection to the home had been [too] tenuous and he was [not] the type of overnight guest to which Fourth Amendment privacy expectation has been assigned." R., Vol. I, at 30. Accordingly, the district court concluded that the search did not violate the Fourth Amendment. We need not, however, definitively decide this issue. In this instance, we assume without deciding that Mr. Maestas was a social or overnight guest at Road Dog's residence and that for Fourth Amendment purposes his expectation of privacy was coterminous with the expectation of privacy of the tenant, Road Dog. Under these assumptions, Mr. Maestas had a reasonable expectation of privacy in the apartment. But that does not necessarily resolve the issue of whether Mr. Maestas—standing in the shoes of the tenant, Road Dog—had a reasonable expectation of privacy in the garbage storage area adjacent to the triplex residence. That is the issue before us for decision.

Mr. Maestas argues that the garbage storage area is within the curtilage protected by the Fourth Amendment, while the government argues that it is not. Under well-settled Fourth Amendment jurisprudence, the privacy expectation that one has in the home generally extends to the "curtilage" of the home. *See, e.g.*, *Kyllo v. United States*, 533 U.S. 27, 34 (2001); *Oliver v. United States*, 466 U.S. 170, 180 (1984); *Reeves v. Churchich*, 484 F.3d 1244, 1254 (10th Cir. 2007). "Curtilage is the area to which extends the intimate activity associated with the

8

sanctity of a man's home and the privacies of life." *Lundstrom v. Romero*, 616

F.3d 1108, 1128 (10th Cir. 2010) (brackets omitted) (quoting *Reeves*, 484 F.3d at

1254) (internal quotation marks omitted).  In determining whether an area around

a home is within the "curtilage," the court generally considers four factors: "(1)

the area's proximity to the home; (2) whether the area is included within an

enclosure surrounding the house; (3) the manner in which the area is used; and (4)

the steps the resident has taken to protect the area from observation." *Id.*

Regarding the first, second, and fourth factors, the evidence presented in

this case demonstrates that the garbage storage area at issue abuts one unit of the

triplex, is enclosed by a fence, and is largely shielded from observation.  *See* R.,

Vol. III, at 17–18, 32 (stating that the area was "an enclosed area adjacent to the

residence," surrounded by a "coyote fence," and that the officer "could not see"

Mr. Maestas when he entered the area).  However, as stated above, "curtilage" is

defined as "the area to which extends the intimate activity associated with the

sanctity of a man's home and the privacies of life." *Lundstrom*, 616 F.3d at 1128.

Consequently, our observation that "it is difficult to imagine anyone using an area

in which garbage was regularly deposited for the intimate activities of the home"

is at least arguably relevant to our assessment of the third factor.  *United States v.*

*Long*, 176 F.3d 1304, 1308 (10th Cir. 1999).[2]  However, ultimately we need not

---

[2]  In *Long*, police officers "seized three garbage bags from atop a
trailer parked near [the defendant's] garage."  176 F.3d at 1306.  On appeal, we
concluded that "the district court's determination that the trailer was outside the

9

opine on whether the garbage storage area located outside Road Dog's residence is in fact within the curtilage. Even assuming, *arguendo*, that it is, Mr. Maestas cannot demonstrate that he had a reasonable expectation of privacy in the area.

Road Dog lived in a multi-unit residential complex—namely, a triplex. Thus, the garbage storage area was not used exclusively by Road Dog and his guests; to the contrary, it was used by at least two other tenants in the triplex (and presumably their guests), and it was accessible by the landlord (and presumably his or her agents). *See* R., Vol. III, at 14 (stating that the area contained "three trash cans" that were used by the "three residents at the apartment complex"). The government argues that "[t]he communal nature of the garbage area defeats any argument that Maestas maintained a legitimate expectation of privacy in that space." Aplee. Br. at 10–11. Although we have stated in dicta that "[a]partment tenants who move personal items into a common hallway cannot reasonably believe those items will be left uninspected," *United States v. Barrows*, 481 F.3d 1246, 1249 (10th Cir. 2007), we have never definitively ruled on whether an individual can have a reasonable expectation of privacy in the common or shared areas of a multi-unit residential dwelling, *see United States v. Martin*, 613 F.3d 1295, 1299 & n.1 (10th Cir. 2010) (recognizing the "disagreement among our

curtilage [was] not clearly erroneous." *Id.* at 1308. In noteworthy respects, however, the garbage area in *Long* differs from the one at issue here. In *Long*, "no fence or other barrier enclosed the trailer," and the defendant did not "attempt[] in any way to shield [the trailer] from public view." *Id.*

sister courts about the Fourth Amendment status of apartment building common areas," but finding it "unnecessary to resolve whether [the defendant] possessed a reasonable expectation of privacy in the apartment building's atrium or entryway").

In general, most circuit courts have found that "shared" or "common" areas in apartment complexes or multi-unit dwellings, such as hallways, entryways, and basements, are not areas over which an individual tenant can have a reasonable expectation of privacy. *See, e.g.*, *United States v. Miravalles*, 280 F.3d 1328, 1333 (11th Cir. 2002) (holding that "tenants in a large, high-rise apartment building, the front door of which has an undependable lock that was inoperable on the day in question, [do not] have a reasonable expectation of privacy in the common areas of their building"); *United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993) (holding that a tenant in an apartment complex "has no reasonable expectation of privacy in the common areas of the building"); *United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992) (holding that the defendant did not have a reasonable expectation of privacy in the shared hallway or the backyard of a three-story, multi-unit apartment building); *United States v. Eisler*, 567 F.2d 814, 816 (8th Cir. 1977) (holding that an apartment tenant does not have "a reasonable expectation of privacy in the hallway of the apartment building").  The general reasoning behind this conclusion, as the Eleventh Circuit explained in *Miravalles*, is that apartment tenants

11

have little control over those areas, which are available for the use of other tenants, friends and visitors of other tenants, the landlord, delivery people, repair workers, sales people, postal carriers and the like. The reasonableness of a tenant's privacy expectation in the common areas of a multi-unit apartment building stands in contrast to that of a homeowner regarding the home and its surrounding area, over which the homeowner exercises greater control.

280 F.3d at 1332 (citations omitted).[3]

Most courts have found this reasoning applies even to multi-unit complexes with a small number of units, such as duplexes. *See, e.g.*, *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999) (holding that a tenant of a two-unit complex had no reasonable expectation of privacy in the shared hall closet of the dwelling, which was accessible by two other tenants and the landlord); *United States v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985) (holding that the defendant did not have a reasonable expectation of privacy in the entryway of a two-unit dwelling); *see also United States v. McGrane*, 746 F.2d 632, 634 (8th Cir. 1984)

---

[3] *But see United States v. Carriger*, 541 F.2d 545, 549–50 (6th Cir. 1976) (holding that "a tenant in an apartment building has a reasonable expectation of privacy in the common areas of the building not open to the general public," where the apartment building was locked and the officer gained access to the common area "without permission" by entering the complex as several workmen left the building). The Sixth Circuit has recognized that *Carriger* is "outside of the mainstream" in finding a reasonable expectation of privacy in such common areas and has declined to move further in this regard by broadly applying its holding. *United States v. Dillard*, 438 F.3d 675, 683 (6th Cir. 2006); *see Nohara*, 3 F.3d at 1242 ("[W]e join the First, Second, and Eighth Circuits which have rejected this [*Carriger*] rationale and held an apartment dweller has no reasonable expectation of privacy in the common areas of the building whether the officer trespasses or not").

(holding that the defendant had no Fourth Amendment right to privacy in the basement of a four-apartment residence, which was accessible to all tenants and the landlord, even though the officer "gained entry to the basement as an uninvited person").[4]

On the other hand, at least one court has recognized that under certain unique circumstances a different result may be warranted—specifically, when all the occupants of a multi-unit residential dwelling have a familial or other special relationship with each other. In *United States v. King*, the Sixth Circuit held that the defendant "had a reasonable expectation of privacy in the basement of the two-family duplex where he resided," when "he shared the downstairs unit with his brother while his mother and siblings resided in the upstairs unit." 227 F.3d 732, 748–50 (6th Cir. 2000). In other words, the defendant had a valid privacy interest in the shared basement of the two-unit residential dwelling because, among other things, the residents were all "family members." *Id.* at 749; *see also United States v. Mendoza*, 281 F.3d 712, 721 (8th Cir. 2002) (Bye, J., dissenting) (disagreeing with the majority's holding that the defendant did not have a Fourth Amendment privacy interest in the vestibule of a duplex because, among other

---

[4]     *But see United States v. Fluker*, 543 F.2d 709, 716 (9th Cir. 1976) (holding that the defendant had a reasonable expectation of privacy in the shared hallway of a duplex, where the door to the hallway was "always locked and [] only the occupants of the two apartments and the landlord had keys thereto"); *Fixel v. Wainwright*, 492 F.2d 480, 484 (5th Cir. 1974) (holding that the defendant had a reasonable expectation of privacy in the shared backyard of a four-unit complex).

13

reasons, "[t]he only two tenants of the duplex were boyfriend and girlfriend, and thus they shared a common interest in excluding the public from the common vestibule").

Keeping these principles in mind, we need not establish any bright-line rules that would generally define the Fourth Amendment's reach over common or shared areas of multi-unit residential dwellings. *See United States v. Holt*, 264 F.3d 1215, 1231 (10th Cir. 2001) (en banc) (per curiam) ("Because of 'the fact-specific nature of the reasonableness inquiry,' the Supreme Court has generally 'eschewed bright-line rules' in the Fourth Amendment context." (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996))), *abrogated on other grounds as stated in United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007); *see also United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (noting that the inquiry "is necessarily fact dependent, and whether a legitimate expectation of privacy exists in a particular place or thing must be determined on a case-by-case basis" (citations omitted) (internal quotation marks omitted)). We conclude that on the particular facts of this case Mr. Maestas has failed to demonstrate that he had a subjective expectation of privacy in the garbage storage area which society is willing to accept as being objectively reasonable. First, the fact that this was a common area shared by all three tenants (and presumably their guests) and the landlord (and presumably his or her agents) weighs against a conclusion that Mr. Maestas had a reasonable expectation of privacy in the area. *See, e.g.*, *McCaster*,

14

193 F.3d at 933 (finding no Fourth Amendment right to privacy in the hall closet of a two-unit dwelling when "[t]he evidence showed that two other tenants, as well as the landlord, had access to the closet"); *McGrane*, 746 F.2d at 634 (holding that the tenant did not have a reasonable expectation of privacy in the common storage area of the complex, which was "accessible to all tenants and the landlord"); *see also Barrows*, 481 F.3d at 1249 ("Apartment tenants who move personal items into a common hallway cannot reasonably believe those items will be left uninspected.").

Second, Mr. Maestas has not demonstrated that Road Dog had any sort of familial or other special relationship with the other tenants—as in *King*—that might warrant a different result. *See* 227 F.3d at 748–50. Finally, the area in question was located outside of the multi-unit complex and was used to store cans of garbage. *Cf. Long*, 176 F.3d at 1308 ("[I]t is difficult to imagine anyone using an area in which garbage was regularly deposited for the intimate activities of the home."). Under these specific facts, it cannot be said that Mr. Maestas had a reasonable expectation of privacy in the shared garbage storage area of Road Dog's triplex. Accordingly, the district court did not err in denying the motion to suppress.

## CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's denial of Mr. Maestas's motion to suppress the methamphetamine and firearm.

15