# Third District Court of Appeal

## State of Florida

Opinion filed December 9, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2887
Lower Tribunal No. 14-15745
_____

**The State of Florida,**
Appellant,

vs.

**Roberto Alberto Ortamadruga,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Ariana Fajardo Orshan, Judge.

Pamela Jo Bondi, Attorney General, and Keri T. Joseph, Assistant Attorney General, for appellant.

Richard J. Diaz, for appellee.


Before SUAREZ, C.J., and WELLS and LOGUE, JJ.

WELLS, Judge.

The State appeals from an order suppressing evidence seized following the search of a residence owned by Roberto Ortamadruga but leased in part to another individual. The State claimed and we agree that Ortamadruga had no privacy expectation in the leased portion of the home so as to accord him standing to object to contraband found therein. While Ortamadruga testified that he had a key to the leased premises and that some old papers belonging to him were located there, he also testified that during the seven month's duration of his oral lease with this trucker known only to him as Tomas, he never set foot in that portion of his home (comprised of two bedrooms and a bath located behind locked doors) leased to Tomas and in which a substantial amount of contraband was found. Defendant's own testimony was that he respected Tomas' privacy, each portion of the house was private:

> Q.   And, you said that you respected his privacy which is why you didn't go in [Tomas's portion of the home], correct?
>
> A.   Of course.
>
> Q.   So, you considered your portion of the home private to you?
>
> A.   Of course.
>
> Q.   And, his portion of the home private to him, correct?
>
> A.   Of course.

Thus, on the record before us we cannot agree with the trial court's reliance on State v. Suco, 502 So. 2d 446 (Fla. 3d DCA 1896), to conclude that Ortamadruga had standing to complain as to the evidence seized in that portion of the house leased to Tomas. In Suco, a landlord retained a key to collect rents and to perform maintenance and repairs. He also used his key to enter the leased home without the lessee's knowledge while one of the lessees was present and made himself at home in the kitchen and even sat down to watch television with the lessees' children. No such possessory interest was demonstrated in this case. Landlord Ortamadruga himself testified he never entered the leased premises to make repairs or for any other purpose after his lease of the segmented part of the home to Tomas. There also is no evidence that Ortamadruga entered the leased premises to collect rent which, according to him, the tenant paid in cash by leaving it under a door mat in Ortamadruga's part of the home.

Indeed, the trial judge credited Ortamadruga's testimony that he, the landlord, extended to his tenant an extraordinary measure of privacy in that he did not ask Tomas for (1) a signed lease; (2) a deposit check; (3) a last name; (4) a phone number; (5) contact information; (6) any other identifying information; or (7) any background information. In addition, this landlord virtually never saw his tenant.

3

Ortamadruga suggests that he had a privacy interest in the areas behind the locked doors in that portion of the house he leased to Tomas, and into which he testified that he never ventured, because he had left in that area some furniture containing some old papers of an undisclosed nature. But Ortamadruga, who has the burden of proof on this point, did not establish that the papers were such that society would recognize that he had a reasonable expectation of privacy in them. Indeed, the only evidence in the record suggests that Ortamadruga did not have a privacy interest in those papers having left them in a place where a virtual stranger had unfettered access.

In sum, while the evidence from Ortamadruga was that he, like most other landlords, could enter the leased premises to make repairs, he assiduously recognized his tenant's privacy rights and never accessed the leased premises. Because Ortamadruga failed to carry his burden to demonstrate a privacy expectation in that part of his home leased to Tomas, we reverse the trial court's determination that he had standing to suppress the evidence of criminality seized therein. See United States v. Silva, 247 F. 3d 1051, 1055 (9th Cir. 2001) ("Fourth Amendment rights cannot be asserted vicariously. In order to claim the protections of the Fourth Amendment . . . Defendants must establish that they had an expectation of privacy . . . and that their expectation was reasonable.") (citations omitted); State v. Mobley, 98 So. 3d 124, 125 (Fla. 5th DCA 2012) ("The

proponent of a motion to suppress carries the initial burden of establishing a violation of the Fourth Amendment.") (citing <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978))); <u>Davis v. State</u>, 582 So. 2d 61, 62 (Fla. 1st DCA1991) ("Since a reasonable view of the evidence supports a determination that appellant did not have a reasonable expectation of privacy sufficient to assert Fourth Amendment protection, we affirm the trial court's denial of the motion to suppress."); <u>State v. Mallory</u>, 409 So. 2d 1222, 1223 (Fla. 2d DCA 1982) ("The starting point for any consideration of standing to challenge the search of a dwelling is <u>U. S. v. Salvucci</u>. In that case the Supreme Court overruled the 'automatic standing' rule of <u>Jones v. U. S.</u>, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960), and held that a defendant charged with a crime of possession can claim the benefits of the exclusionary rule only if his own Fourth Amendment rights have in fact been violated. This occurs when the person can demonstrate a reasonable expectation of privacy in the area which was searched.").[1]

Accordingly, we hold that Ortamadruga lacked standing to contest the search of  that portion of his home located behind locked doors which were leased to Tomas.  The order suppressing all evidence relating to contraband seized in that portion of his home is, therefore, reversed.

---

[1]  Because the State does not argue that the trial court erred in determining that Ortamadruga's written consent was not voluntary, we decline to address this issue.

Reversed and this matter remanded for further proceedings consistent with this opinion.