NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                      )
                                       )
            Appellant,                 )
                                       )
v.                                     )        Case No. 2D17-2973
                                       )
DERRICK JAMMELL PETTIS,                )
                                       )
            Appellee.                  )
_____)

Opinion filed March 6, 2019.

Appeal from the Circuit Court for
Pinellas County; Frank Quesada,
Judge.

Ashley Moody, Attorney General,
Tallahassee, and Jason M. Miller,
Assistant Attorney General, Tampa, for
Appellant.

Robert A. Love, St. Petersburg, for
Appellee.


LaROSE, Chief Judge.

        The State appeals the trial court's order suppressing contraband found in

Derrick Jammell Pettis's car.  We have jurisdiction.  See Fla. R. App. P. 9.140(c)(1)(B).

As framed by the trial court's order, the issue for us is whether the car was within the

curtilage of the house where it was parked.  If so, law enforcement officers needed a

warrant to search the car and seize the contraband.  See Collins v. Virginia, 138 S. Ct.

1663, 1668 (2018) (holding that the automobile exception does not permit "a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein").

Initially, however, we must confront Mr. Pettis's standing to challenge the search and seizure involved here. Although standing was not raised below, the State correctly observes that it may raise lack of standing for the first time on appeal. See Hendley v. State, 58 So. 3d 296, 299 (Fla. 2d DCA 2011) ("Although the State did not raise this issue in the circuit court, standing may be properly raised for the first time on appeal."); McCauley v. State, 842 So. 2d 897, 900 (Fla. 2d DCA 2002) ("Although this point was not argued by the State at the hearing on the motion, the concept of standing has been subsumed into Fourth Amendment issues and can be raised for the first time on appeal.").

Because the standing issue was not developed in the trial court, we reverse the order on appeal and remand for the trial court to conduct a suppression hearing to determine Mr. Pettis's standing to challenge the search and seizure.

**Background Facts**

A police officer in an unmarked cruiser saw Mr. Pettis fail to make a complete stop at a stop sign. Mr. Pettis continued on for a short while until he parked his car near his mother's house. He exited the vehicle, ambled up to the house, and joined his mother on the front porch. About a minute later, six or seven police cruisers converged on the scene. Officers approached and announced that they wanted to speak with Mr. Pettis. He told the officers that he had no desire to speak with them and began to go into the house. The officers restrained him, and a scuffle ensued.

During the course of walking from their cruisers to the house, some officers walked by Mr. Pettis's car. They observed through the front windshield a large unlabeled pill bottle containing baggies of what appeared to be either cocaine or heroin. The officers did not seize the bottle at the scene. Rather, after arresting Mr. Pettis for his unruly behavior, officers seized his car keys from his pocket, and an officer drove the car to the police station.[1] There, the substance tested positive for heroin.

In granting the suppression motion, the trial court found that there was neither hot pursuit nor any other exigent circumstance that would justify the warrantless entry into Mr. Pettis's locked car and the seizure of heroin. Although the written order does not explicitly say so, in orally announcing its ruling, the trial court stated that the car was "on the curtilage" of his mother's house.

## Discussion

During the evidentiary hearing, the parties elicited scant testimony or other evidence explaining Mr. Pettis's connection to the house. This omission detracts from our determination of the extent of protection afforded Mr. Pettis under the Fourth Amendment. See, e.g., State v. Washington, 884 So. 2d 97, 100 (Fla. 2d DCA 2004) (holding that defendant lacked standing to challenge search of home where she was short-term, nonovernight, casual guest). Compare Minnesota v. Carter, 525 U.S. 83, 90-91 (1998) (holding that persons present in the home of a casual acquaintance for a few hours for business purposes do not have a reasonable expectation of privacy), with Minnesota v. Olson, 495 U.S. 91, 98 (1990) (holding that an overnight guest possessed

---

[1]Officers testified that they removed the car from the scene because onlookers were becoming argumentative and combative; the officers feared for their safety as well as for the integrity of the crime scene. Our review of the surveillance CD shows a couple of curious passersby.

a legitimate expectation of privacy and was thus entitled to the protection of the Fourth Amendment).

To invoke Fourth Amendment protections, a defendant must demonstrate a reasonable expectation of privacy in the place searched. See Rakas v. Illinois, 439 U.S. 128, 143 (1978); cf. U.S. v. Puliese, 671 F. Supp. 1353, 1359 (S.D. Fla. 1987) (enumerating six factors to be considered in determining whether a guest's expectation of privacy is reasonable: "(1) Who has invited the guest into the home; (2) For what purpose and for how long has the movant been invited into the home; (3) Has the owner or lessee given the guest a key or other means of entry to the home; (4) What use has the guest made of the home and indeed what use has been made of the intruded area; (5) Does the movant/guest have the power and authority to exclude others from the home; and, (6) With how many other people has the use of the area been shared").

The expectation of privacy must originate from "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Rakas, 439 U.S. at 143 n.12. The capacity to claim constitutional protection depends upon the person and not merely upon a property right in the invaded place. Id. at 143 (citing Katz v. United States, 389 U.S. 347, 353 (1967)). Thus, Mr. Pettis's status at the house is a necessary part of our Fourth Amendment analysis.

In turn, his status will inform whether he is entitled to the Fourth Amendment protections afforded to a house and its curtilage, because, after all, "[t]he Fourth Amendment protects the curtilage of a house." Abel v. State, 668 So. 2d 1121, 1122-23 (Fla. 2d DCA 1996); see also Florida v. Jardines, 569 U.S. 1, 6 (2013) ("We therefore regard the area 'immediately surrounding and associated with the home'—

- 4 -

what our cases call the curtilage—as 'part of the home itself for Fourth Amendment purposes.' " (quoting Oliver v. United States, 466 U.S. 170, 180 (1984))); Powell v. State, 120 So. 3d 577, 583 (Fla. 1st DCA 2013) ("Because it is appurtenant to the home, the curtilage is entitled to the same Fourth Amendment protection as the area within the home." (citing California v. Ciraolo, 476 U.S. 207, 212 (1986))); Pinyan v. State, 523 So. 2d 718, 720 (Fla. 1st DCA 1988) ("It is well settled that the Fourth Amendment protection of the home extends to the curtilage of a residence."); United States v. Maestas, 639 F.3d 1032, 1036-37 (10th Cir. 2011) ("Under well-settled Fourth Amendment jurisprudence, the privacy expectation that one has in the home generally extends to the 'curtilage' of the home.").

We utilize a mixed standard of review in examining a trial court's ruling on a motion to suppress:

> The trial court's "determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. However, the circuit court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review."

State v. K.S., 28 So. 3d 985, 987 (Fla. 2d DCA 2010) (quoting State v. Clark, 986 So. 2d 625, 628 (Fla. 2d DCA 2008)). Our review of the surveillance CD supports the trial court's finding that Mr. Pettis parked his car within the curtilage of his mother's house. But that determination does not automatically compel the conclusion that a warrant was necessary to search the car. Cf. State v. Rickard, 420 So. 2d 303, 305 (Fla. 1982) (distinguishing between " 'non-intrusion' . . . when both the officer and the contraband are in a non-constitutionally protected area" and "the resulting seizure has no fourth amendment ramifications" and " 'preintrusion.' Here the officer is located outside of a

constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband" (quoting Ensor v. State, 403 So. 2d 349, 352 (Fla. 1981))).

The extent of Fourth Amendment protection afforded to Mr. Pettis is cabined by the a priori determination of whether he had standing in the first place to challenge the search and seizure of the car. See Washington, 884 So. 2d at 98 ("Although the issue here is generally framed as one of 'standing,' the Supreme Court in [Rakas, 439 U.S. 128], refused to employ only the traditional concept of standing when analyzing Fourth Amendment rights; instead, it stated that 'the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.' " (quoting Rakas, 439 U.S. at 140)). "A search violates a defendant's Fourth Amendment rights only if (1) a defendant demonstrates that he or she had an actual, subjective expectation of privacy in the property searched and (2) a defendant establishes that society would recognize that subjective expectation as objectively reasonable." Hicks v. State, 929 So. 2d 13, 16 (Fla. 2d DCA 2006); see also Nieminski v. State, 60 So. 3d 521, 524 (Fla. 2d DCA 2011) ("[B]efore the trial court considers the merits of a Fourth Amendment motion to suppress, the defendant must first establish a factual basis justifying his or her claim to have possessed a Fourth Amendment right at the time of the alleged invasion. This analysis is actually the first part of the substantive legal analysis of a Fourth Amendment claim.").

If, on remand, the trial court concludes that Mr. Pettis had standing to challenge the search and seizure, then it follows that he likewise possessed an

- 6 -

expectation of privacy in the car located within the curtilage of the house. And, therefore, officers were obligated to obtain a warrant prior to searching and seizing the automobile and the contraband therein. See Collins, 138 S. Ct. at 1671 ("In physically intruding on the curtilage of Collins' home to search the motorcycle, Officer Rhodes not only invaded Collins' Fourth Amendment interest in the item searched, i.e., the motorcycle, but also invaded Collins' Fourth Amendment interest in the curtilage of his home. The question before the Court is whether the automobile exception justifies the invasion of the curtilage. The answer is no." (footnote omitted)).

If, on the other hand, the trial court finds that Mr. Pettis lacked standing, then he will not succeed in suppressing the drugs and drug paraphernalia on Fourth Amendment grounds. See Washington, 884 So. 2d at 98 ("To successfully claim the protection afforded by the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that this expectation is reasonable."). In such a scenario, Mr. Pettis's vehicle is not afforded the Fourth Amendment protections extended to a home's curtilage. Consequently, law enforcement's observations of the drugs in open view from outside of the car,[2] see Rickard, 420 So. 2d at 305, a non-constitutionally protected area, would furnish officers with probable cause to conduct a warrantless, yet constitutional, search of the vehicle. This would not offend the Fourth Amendment. See State v. Ross, 209 So. 3d 606, 609 (Fla. 2d DCA 2016) ("Mr. Ross was arrested after fleeing and eluding police officers and hiding in a home. After his arrest, a police officer looked through the window of his car

_____

[2]In Oliver v. State, 989 So. 2d 16, 17-18 (Fla. 2d DCA 2008), this court reversed the trial court's denial of a suppression order in an " 'open-view' situation" where the "incriminating nature of the items was not immediately apparent." Mr. Pettis ventures no such argument here.

and saw crack cocaine in plain view. Sergeant Seymour's lawful observation of illegal drugs in the car gave the police probable cause to believe that the car contained evidence of a crime. The warrantless search of the car was thus authorized by the automobile exception." (footnote omitted) (citing State v. Green, 934 So. 2d 1004, 1006-07 (Fla. 2d DCA 2006); State v. Gardner, 72 So. 3d 218, 220-21 (Fla. 2d DCA 2011); State v. Fischer, 987 So. 2d 708, 711-13 (Fla. 5th DCA 2008))).

Because the parties did not develop the standing issue below, we are reluctant to assess the issue in the first instance.[3] See McCauley, 842 So. 2d at 900 ("Because McCauley was not given an opportunity to prove his interest in the premises below due to the State's tacit concession of standing, we conclude that he is entitled to a hearing on the matter."); see also State v. Fernandez, 36 So. 3d 120, 123 (Fla. 2d DCA 2010) ("[W]e reverse the order suppressing the evidence and remand for further proceedings. If Fernandez wishes to pursue her motion to suppress, the trial court shall hold a hearing on the issue of standing, at which time Fernandez will have the burden to establish that she had a reasonable expectation of privacy in the prescriptions."); Murphy v. State, 32 So. 3d 122, 125 (Fla. 2d DCA 2009) ("While the issue can be addressed by this court, Murphy was never given an opportunity to meet his burden of proof on this issue. Accordingly, Murphy is entitled to an evidentiary hearing on the matter." (citation omitted)). But see Hendley v. State, 58 So. 3d 296, 299 (Fla. 2d DCA 2011) (declining to reverse and remand trial court's denial of motion to suppress on

---

[3]Officer Aaron Franklin testified that during questioning, Mr. Pettis related that the residence "was his mother's house" and that "he was going there to visit his mom." Be that as it may, this issue is best developed and addressed on remand with the introduction of additional evidence and/or argument, rather than by this court on the record before us.

issue of standing raised for the first time on appeal because "a remand for that purpose would be a futile exercise in this case").

## Conclusion

As we did in McCauley and its progeny, we reverse and remand for the trial court to conduct a new suppression hearing at which it shall address standing. 842 So. 2d at 900 ("We therefore reverse and remand for a new suppression hearing at which the trial court shall address only the issue of standing. If the trial court finds that McCauley established standing, it should grant the motion to suppress based on the fact that the search and seizure was otherwise illegal."); see also State v. Mobley, 98 So. 3d 124, 125 (Fla. 5th DCA 2012) ("The proponent of a motion to suppress carries the initial burden of establishing a violation of the Fourth Amendment." (citing Rakas, 439 U.S. at 130 n.1)).

Reversed and remanded with instructions.


KHOUZAM and SLEET, JJ., Concur.